**UNITED STATES GENERAL, INC., a Wisconsin Corporation, Plaintiff,**

v.

**Ronald ARNDT et al., Defendants.**

**Civ. A. No. 75–C–204.**

United States District Court,
E. D. Wisconsin.

Aug. 4, 1976.

---

**20.** *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972).

Robert K. Steuer, Milwaukee, Wis., for plaintiff.

Jerry D. McCormack, Antigo, Wis., for defendants Adamski & Combs.

Robert D. Repasky and Gary L. Carlson, Asst. Attys. Gen., Madison, Wis., for defendant Strandberg.

Richard T. Winter, Antigo, Wis., for remaining defendants.

## DECISION AND ORDER

Before FAIRCHILD, Circuit Judge, REYNOLDS, Chief District Judge, and WARREN, District Judge.

REYNOLDS, Chief District Judge.

This action, brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, involves a fourteenth amendment challenge to the validity of the Wisconsin Attachment Statute, Wis.Stats., Chap. 266 [1] (1973). The plain-

# 1302

1. Chapter 266 of the Wisconsin Statutes (1973) provides, in full, as follows:

## CHAPTER 266

## ATTACHMENT

| | | | |
|---|---|---|---|
| 266.01 | Attachment; municipal corporation. | 266 16 | Bond for release of property; estoppel |
| 266.02 | Writ, form and contents. | 266.17 | Exception to defendant's sureties; release of property; costs. |
| 266.03 | Basis for attachment. | | |
| 266.04 | Amendment to affidavit. | 266 18 | Vacation or modification of writ. |
| 266.06 | Bond; justification. | 266.19 | Traverse of attachment, trial. |
| 266 07 | Additional security. | 266.20 | Trial of traverse |
| 266.08 | Officer's return. | 266.21 | Damages, defendant when to recover. |
| 266.09 | Alias writs. | 266 22 | Return of property, damages on dismissal; entry in register's office. |
| 266.10 | Directions to sheriff, several writs. | | |
| 266.11 | Attachment of real estate. | 266 23 | Judgment for plaintiff, how satisfied. |
| 266.12 | What may be attached; how attached. | 266.24 | Action by sheriff, who to prosecute |
| 266.13 | Indemnity to sheriff | 266.25 | Execution after defendant's death. |
| 266.14 | Sale of perishable property attached or garnished. | 266 26 | Stranger may intervene. |
| 266.15 | Care of property; collection of debts | | |

**266.01 Attachment; municipal corporation.** Any creditor may attach the property of his debtor, in the cases, upon the conditions, and in the manner prescribed in this chapter. No writ of attachment shall be issued against a municipal corporation, as defined in section 67.01 or to recover the price or value of intoxicating liquors sold at retail.

**266.02 Writ; form and contents.** The writ of attachment shall be issued on the request of the plaintiff at any time before final judgment and after a summons is issued and shown to the clerk. It shall be directed to the sheriff of some county in which the property of the defendant is supposed to be, and shall require him to attach all the property of the defendant within his county or so much thereof as may be sufficient to satisfy the plaintiff's demand, together with costs and expenses. It shall be in the name of the court and be sealed with its seal and signed by its clerk.

**266.03 Basis for attachment.** (1) ON CONTRACT OR JUDGMENT. Before any writ of attachment shall be executed the plaintiff or some one in his behalf shall make and annex thereto an affidavit stating that the defendant is indebted to the plaintiff in a sum exceeding fifty dollars specifying the amount above all set-offs, and that the same is due upon contract or upon a judgment and that the affiant knows or has good reason to believe either:

(a) That the defendant is absent from this state, or is concealed therein so that summons cannot be served on him; or

(b) That the defendant has disposed of or concealed or is about to dispose of or conceal his property or some part thereof with intent to defraud his creditors; or

(c) That the defendant has removed or is about to remove property out of this state with intent to defraud his creditors; or

(d) That the defendant fraudulently incurred the obligation respecting which the action is brought; or

(e) That the defendant is not a resident of this state; or

(f) That the defendant is a foreign corporation; or if domestic that no officer or agent thereof on whom to serve the summons exists or resides in this state or can be found; or

(g) That the action is against a defendant as principal on an official bond to recover money due the state or to some county or other municipality therein, or that the action is against the defendant as principal upon a bond or other instrument given as evidence of debt for or to secure the payment of money embezzled or misappropriated by such defendant as an officer of the state or of a county or municipality therein.

(2) TORT ACTION. In tort actions the affidavit shall state that a cause of action in tort exists in favor of the plaintiff and against the defendant, that the damages sustained exceed fifty dollars specifying the amount claimed and either:

(a) That the defendant is not a resident of this state; or that his residence is unknown and cannot with due diligence be ascertained; or

(b) That the defendant is a foreign corporation.

(3) ON DEMANDS NOT YET DUE. An action may be maintained and a writ of attachment issued on a demand not yet due in any case mentioned in this section, except the cases mentioned in sub. (1) (e), (f) and (g) and the same proceedings in the action shall be had and

the same affidavit shall be required as in actions upon matured demands except that the affidavit shall state that the debt is to become due; but the bond specified in s. 266.06 shall be conditioned in 3 times the amount demanded. In case an attachment is issued before the maturity of the debt and a traverse to such attachment is sustained the court shall render a judgment for damages and costs against the plaintiff.

A 2nd writ can be issued before the 1st is dissolved, if based on a different ground. The validity of the basis for the writ must be determined as of the date it is issued. Plan Credit Corp. v. Swinging Singles, Inc. 54 W (2d) 146, 194 NW (2d) 822.

**266.04 Amendment to affidavit.** The affidavit required by section 266.03 may be amended at any time before the trial by the substitution of a new affidavit containing allegations of facts existing at the time of making the former affidavit.

**266.06 Bond; justification.** Before the writ of attachment shall be executed a bond on the part of the plaintiff in the sum of at least two hundred and fifty dollars executed by sufficient surety, shall be delivered to the officer, to the effect that if the defendant recover judgment the plaintiff shall pay all costs that may be awarded to the defendant and all damages which he may sustain by reason of the attachment. The affidavit of the surety annexed to such bond shall state that he is a resident and householder or freeholder within the state and worth double the sum specified in the bond in property therein above his debts and exclusive of property exempt from execution. No bond is necessary when this state or any county, town or municipality therein is plaintiff.

The bond may be executed by plaintiff's attorney on his behalf. Plan Credit Corp. v. Swinging Singles, Inc. 54 W (2d) 146, 194 NW (2d) 822.

**266.07 Additional security.** In case the defendant is not satisfied with the amount specified in the bond or with the surety he may, upon five days' notice to the plaintiff, apply to a judge for additional security and such judge may require the plaintiff to give and file another bond, to be approved by him, in such sum as he shall deem proper, not exceeding the appraised value of the property attached. The surety shall justify as provided in section 266.06; but if there be more than one surety they may be accepted if they are jointly responsible for the required sum.

**266.08 Officer's return.** The officer executing the writ shall return thereon all his proceedings and within ten days from receipt of the bond shall file the summons, writ, affidavit and bond with the clerk of the court.

**266.09 Alias writs.** Alias writs of attachment may be issued to the sheriffs of different counties at any time before judgment. In such case a copy of the affidavit and bond annexed to the original writ shall be annexed to such alias writ. Such alias writs shall be executed and returned in the same manner as the original.

**266.10 Directions to sheriff; several writs.** (1) The sheriff shall without delay seize so much of the property of the defendant, in his county, as will satisfy the demand of the plaintiff, with costs and expenses, and make an inventory thereof; he shall cause all personal property attached by him to be appraised by two disinterested residents of the county, who shall be first sworn by him to make a true appraisement thereof, which appraisement shall be signed by them, and the appraisement and inventory shall be returned with the writ; he shall serve copies of the writ, affidavit and bond, and inventory, upon the defendant in the same manner as a summons. In case of a nonresident or a foreign corporation the sheriff shall serve such copies on any agent of such defendant in the county, if any be known to him.

**(2)** If two or more writs against the same defendant shall be executed on the same property an inventory and appraisement shall be made in but one of the actions, and the sheriff shall indorse on the copy served upon the defendant in the other action a notice that the property seized is the property seized in the action in which the inventory and appraisement are made, giving the title of such action; and such officer shall state in his return the fact of such indorsement.

A writ may be served on a nonresident's attorney Plan Credit Corp. v. Swinging Singles, Inc 54 W (2d) 146, 194 NW (2d) 822.

**266.11 Attachment of real estate.** To attach real estate the sheriff shall file in the office of the register of deeds a copy of the writ with his certificate that by virtue of the original writ he has attached all the interest of the named defendant in such real estate, describing the same.

**266.12 What may be attached; how attached.** All the property of the defendant, not exempt from execution, may be attached. Personal property shall be attached as upon an execution and the provisions respecting the levy of an execution thereon shall be applicable to an attachment.

**266.13 Indemnity to sheriff.** If there is reasonable doubt as to the ownership of the property or as to its liability to be attached the

sheriff may require sufficient security to indemnify him for attaching such property.

**266.14 Sale of perishable property attached or garnished.** When any property taken on a writ of attachment or received by the officer from any garnishee including actions appealed to the court, shall be likely to depreciate in value before the end of the action or the keeping thereof shall be attended with much loss or expense the court or a judge may order it sold in such manner as the best interests of the parties demand, and the money realized shall be held by the officer in lieu of the property sold.

**266.15 Care of property; collection of debts.** The officer shall keep the property seized by him and the proceeds of such as shall have been sold to answer any judgment which may be recovered in such action; and shall, subject to the direction of the court or judge, collect and receive into his possession all the debts, credits and effects of the defendant. The officer may also take such legal proceedings, either in his own name or in the name of such defendant, as may be necessary for that purpose and discontinue the same at such times and on such terms as the court or judge may direct.

**266.16 Bond for release of property; estoppel.** The defendant may, at any time before judgment, deliver to the officer who attached his property a bond executed by two sureties, to the effect that they will, on demand, pay to the plaintiff the amount of the judgment, with all costs, that may be recovered against such defendant in the action, not exceeding the sum specified in the bond with interest. Such a bond shall be at least double the amount alleged by the plaintiff to be due or, at defendant's option, double the value of the property attached, according to the appraisement; or, if real estate, in a sum fixed by the court or a judge, on notice. The sureties shall justify as provided in section 266.06, and may be accepted if they are jointly responsible for the required sum.

**266.17 Exception to defendant's sureties; release of property; costs.** The officer shall forthwith give to the plaintiff a copy of such bond with notice of the time when the same was delivered to him; and the plaintiff shall, within three days thereafter, give notice to the officer that he excepts to the sureties or he waives all objections to them. When plaintiff excepts the sureties shall justify as provided in section 265.08. The officer shall be responsible for the sufficiency of such sureties and may retain possession of the attached property until they shall so justify or objection be so waived.

Thereafter the officer shall deliver the property attached to such defendant; if real estate is attached, the sheriff shall file a certificate of the discharge thereof in the office of the register of deeds. If the plaintiff recover, all his costs and disbursements on the attachment shall be included in his judgment.

**266.18 Vacation or modification of writ.** The court or the presiding judge thereof may, at any time before the trial of the action or a release of the property under section 266.17, vacate or modify the writ of attachment for irregularity or other sufficient cause, upon five days' notice of motion; and the motion therefor may be combined with a motion to increase the plaintiff's security under section 266.07.

**266.19 Traverse of attachment, trial.** Within 10 days after notice of the issuing of a writ of attachment against his property or within the time in which he may answer the complaint, the defendant may, by special answer, deny the existence, at the time of the making of the attachment affidavit of the material facts stated therein except the alleged liability and the amount thereof. The issue so raised shall be tried by the court, before the trial of the action and the affirmative shall be upon the plaintiff. And if the defendant has made an assignment for the benefit of his creditors his assignee may traverse and defend.

**266.20 Trial of traverse.** If the court on the trial of such issue, raised by the traverse, finds for the defendant the judge presiding shall tax the defendant's costs of such trial, and an order shall be entered that the property attached be forthwith delivered to the defendant; and the jury or the court shall, on the trial of the action or thereafter assess the damages sustained by the defendant by reason of the taking and detention or sale of the property attached or by reason of any injury thereto; and the same, together with the costs so taxed, shall be a set-off to the plaintiff's demand, and if in excess of it, or the plaintiff fail to recover, the defendant shall have judgment for the amount his due. If the court on the trial of such special issue find for the plaintiff the presiding judge shall tax the plaintiff's costs of such trial, and the amount so taxed shall, if he recover, be taxed by the clerk as disbursement in the action; and if the defendant or his assignee recover judgment in the action said costs and the judgment shall be offset.

**266.21 Damages, defendant when to recover.** If the defendant prevails in the action or if the action be discontinued the damages sustained by him by reason of the taking and

tiff, United States General, Inc. ("U. S. General") seeks damages as well as declaratory and injunctive relief. Jurisdiction is conferred on this court under the provisions of 28 U.S.C. § 1343.

This case is presently before the court on plaintiff's motion for declaratory and injunctive relief, and defendant Strandberg's motion to dismiss for lack of subject matter jurisdiction and/or failure of the complaint to state a claim on which relief can be granted. For the reasons given below plaintiff's motion must be granted and en-

detention or sale of any property attached by reason of any injury thereto shall be assessed and he shall have judgment therefor.

**266.22 Return of property; damages on dismissal; entry in register's office.** When the defendant recovers judgment all the money or property held by any writ of attachment shall be delivered to him, subject to the plaintiff's rights on appeal, and he may maintain an action on the plaintiff's bond for the assessed damages sustained by reason of the writ of attachment. Upon the entry of final judgment in favor of the defendant or on satisfaction of a plaintiff's judgment, the clerk of court shall, if real estate was attached, certify the fact of such judgment or satisfaction, and on filing such certificate with the register of deeds in any county in which attached lands are situated such register shall enter such certificate upon the records of his office in discharge of such attachments.

**266.23 Judgment for plaintiff, how satisfied.** When the plaintiff shall have recovered judgment in the action the sheriff or officer shall satisfy the same out of the property attached or received from any garnishee or otherwise, if sufficient therefor:

**(1)** By paying over to such plaintiff all money attached or received upon sales of property, or from any garnishee, or upon any debts or credits, or so much thereof as shall be necessary.

**(2)** By selling, under such execution as may be issued on such judgment, so much of the attached property, real or personal, as shall be necessary to satisfy the balance unpaid, according to the provisions regulating sales upon execution; except as provided in subsection (4) hereof.

**(3)** If any of the attached property belonging to the defendant shall have passed out of the hands of the sheriff without having been sold or converted into money such sheriff shall repossess himself of the same, and for that purpose shall have all the authority which he had to seize the same under the writ of attachment; and any person who shall wilfully conceal or withhold such property from the sheriff shall be liable to double damages at the suit of the party injured.

**(4)** Until the judgment against the defendant shall be paid the sheriff may proceed to collect

the evidences of debt that may have been seized or attached by virtue of the writ of attachment or that may have been delivered up by any person summoned as garnishee, and to prosecute any bond he may have taken in the course of such proceedings, and apply the proceeds thereof to the payment of the judgment and costs. When the judgment and all costs of the proceedings shall have been paid, the sheriff, upon reasonable demand, shall deliver over to the defendant the residue of the property attached or that may have been received from any garnishee, or the proceeds thereof.

**266.24 Action by sheriff, who to prosecute.** The actions herein authorized to be brought by the sheriff or officer may be prosecuted by the plaintiff or under his direction, upon the delivery by him to the sheriff or officer of an undertaking, with two sufficient sureties, to the effect that the plaintiff will indemnify him for all damages, costs and expenses thereon not exceeding two hundred and fifty dollars in any one action; such sureties shall, when required by the sheriff or officer, justify by making an affidavit that each is a householder and worth double the amount of the penalty named in the undertaking over and above all debts and exemptions.

**266.25 Execution after defendant's death.** If any defendant whose property is attached shall die and the judgment is in favor of the plaintiff, the property attached shall be applied to the payment of the judgment and execution may be issued on such judgment and satisfied out of the property so attached in the same manner as if such defendant were living.

**266.26 Stranger may intervene.** Any person not a party to the action, whose property is attached, may, at any time, either before or after judgment, be made a party upon his application for the purpose of removing or discharging the attachment. The court may grant such summary relief as shall be just, and may in proper cases award an issue for trial by jury.

forcement of the statute enjoined, while defendant's motion must be denied.

## PARTIES AND FACTUAL BACKGROUND

The plaintiff is a Wisconsin corporation engaged in the business of real estate construction, with its principal place of business in Brookfield, Wisconsin. The defendant Ronald Arndt is a carpenter from Antigo, Wisconsin, who commenced one of the attachment proceedings against the plaintiff which gives rise to this action. The defendant Winona Arndt, presumably Ronald's wife, executed a bond with respect to this attachment proceeding. Defendants Oscar Thomae and Gerald Thomae are father and son and are engaged in the electrical business in Antigo. They also commenced an attachment action against the plaintiff, and their wives, defendants Orletta Thomae and Renae Thomae, each executed a bond in connection with this attachment action. The defendant Julius Wedemayer is a dry-wall applicator in Antigo, who commenced another attachment action against the plaintiff in which his wife, defendant Shirley Wedemayer, executed a supporting bond. The defendant Richard T. Winter is an attorney in Antigo and represented the above-mentioned defendants in their respective attachment actions. All these actions were commenced in the County Court of Langlade County, Wisconsin. The defendant Victoria Adamski is the clerk of court for Langlade County, and the defendant, Honorable Ralph J. Strandberg, is a county judge in Langlade County. Finally, the defendant, Roland Combs is the sheriff of Langlade County.

From a stipulation signed and filed by the parties, the following facts appear. At all times relevant to this suit, U. S. General owned three parcels of real estate which were located in Antigo, Wisconsin. In March of 1975, defendants Ronald Arndt, Oscar Thomae and Gerald Thomae, and Julius Wedemayer each commenced an action

against U. S. General in the County Court for Langlade County in which each claimed that U. S. General owed money for work performed pursuant to a construction agreement on a housing project for the city of Antigo. The provisions of Sec. 266.02, Wis.Stats.,[2] entitle any plaintiff to have a writ of attachment issue upon his request at any time after the summons and complaint are issued and shown to the clerk of court. Before the writ of attachment can be executed, however, the plaintiff or his representative must make and attach to the writ an affidavit showing the basis for the attachment under the provisions of Sec. 266.03, Wis.Stats., and a bond must be delivered in conformity with the provisions of Sec. 266.06, Wis.Stats. Each of the complainants in the state actions executed an affidavit stating that the underlying action was one for damages in excess of $500 which grew out of a contractual agreement, and that U. S. General owned real estate with the jurisdiction of the County Court "which it may attempt to dispose of upon service of the Summons and Complaint in this action with intent to defraud the plaintiff." (Statement of Uncontested Facts, Exhibits "A", "B" and "C".) Each complainant, as principal, and his wife as surety, also executed a bond in the amount of $250 which otherwise met the requirements of Sec. 266.06, Wis.Stats. The defendant Adamski thereupon determined in the case of each complainant that a summons had been issued and that a satisfactory affidavit and bond were attached. This determination was made *ex parte* and without notice to U. S. General. The defendant Adamski then issued three writs of attachment against U. S. General in the name of the defendant, Honorable Ralph J. Strandberg, presiding judge of the County Court of Langlade County, to whom the contract actions and attachment proceedings had been assigned. Defendant Combs, sheriff of Langlade County, executed the writs of attachment against the property of U. S. General under the provisions of Sec. 266.11,

---

2. Since the commencement of this suit Chapter 266, Wis.Stats., has been renumbered as Chapter 811. W.S.A. Rules of Civil Procedure Pamph.App. 2, § 29. For purposes of this opinion the statute will be referred to as Chapter 266.

Wis.Stats., by filing a certificate of attachment in the office of the Register of Deeds of Langlade County. U. S. General first received notice of the attachment of its property when copies of the summons, complaint, writs of attachment, attachment affidavits, and bonds for attachment were served upon it approximately one week after the writs were executed. It is stipulated that each piece of property attached had a market value in excess of $1000.

Shortly after being served, attorneys for U. S. General commenced the present action in federal court and moved the Langlade County Court for an order staying all further proceedings in that court on the complaint and attachment pending a decision in this case. Judge Strandberg subsequently extended the time for U. S. General to answer or otherwise plead to the state court complaint, file a traverse to the attachment pursuant to Sec. 266.19, Wis.Stats., or apply for additional security pursuant to Sec. 266.07, Wis.Stats. No permanent stay was ordered. U. S. General thereupon filed an answer and counterclaim and moved to vacate and quash the attachment. That motion is still pending before the county court. This three-judge district court was convened pursuant to 28 U.S.C. §§ 2281, 2284, and the briefs and arguments of counsel on the motions presently before the court followed.[3]

## STATUTORY SCHEME

In general, Chapter 266 of the Wisconsin Statutes provides a means whereby a plaintiff may attach the assets of a defendant at the inception of an action. Section 266.01 provides that "[a]ny creditor may attach the property of his debtor. * * *" The writ *shall* be issued and signed by the *clerk of the state court* in the name of the court and sealed with its seal at any time before final judgment after a summons has been issued and is shown to the clerk. Section

266.02. In the present case, the plaintiff or his attorney must make an affidavit to the effect that the defendant is indebted to the plaintiff in a sum greater than fifty dollars upon a contract, and that the affiant knows or has good reason to believe that "the defendant has disposed of or concealed or is about to dispose of or conceal his property or some part thereof with intent to defraud his creditors." Section 266.03(1)(b). Section 266.04 provides that this affidavit may be amended at any time before trial by a new affidavit. The plaintiff must post a bond of at least $250, executed by sufficient surety, to the effect that if the defendant shall recover judgment, the plaintiff shall pay all costs that may be awarded to the defendant and all damages which he may sustain by reason of the attachment. Section 266.06. If the defendant denies that the bond posted by the plaintiff is insufficient or the surety unsatisfactory, he may apply to a judge for additional security upon at least five days' notice to the plaintiff. Section 266.07. Within ten days of the receipt of plaintiff's bond, the sheriff shall file the summons, writ, affidavit and bond with the clerk of court, Section 266.08, and in the case of real property, the sheriff files with the register of deeds a copy of the writ with a certificate stating that "by virtue of the original writ he has attached all the interest of the named defendant in such real estate." Section 266.11. By posting a bond executed by two sureties in an amount *double* the sum alleged to be due, or double the value of the property attached, a defendant may release his attached property before judgment. If the attached property is real estate, this bond may be "a sum fixed by the court or a judge, on notice." Section 266.16. Section 266.18 provides that a writ of attachment may be modified or vacated at any time prior to trial "upon five days' notice of motion." A defendant may also file a traverse to the attachment action

---

**3.** Several months after U. S. General brought its motion in county court, it wished to sell two of the attached parcels of real estate. Upon an agreement and stipulation entered into by the parties, the parcels were sold and the net proceeds deposited with the clerk of the County Court of Langlade County. It was agreed that the parcels were to be transferred free and clear of all rights created by the attachment, those rights to attach to the deposited funds in lieu thereof.

in which any material fact set forth in the attachment affidavit, except the alleged liability and the amount thereof may be denied. The questions joined shall be tried by the court before trial of the underlying action, with the burden of proof placed on the plaintiff. Section 266.19. The party prevailing on the issues raised by the traverse shall receive, either through the ultimate judgment or by way of set-off, his costs arising out of the traverse. Section 266.20. If the defendant ultimately prevails in the underlying action, or if the action is discontinued, he shall be awarded his damages resulting from the detention or sale of the property attached. Section 266.-21.

## NONINTERVENTION

We are initially faced with the question of whether applicable considerations of comity and federalism require this Court to stay its hand in the present case. Although U. S. General's motion to vacate and quash the attachment is apparently still pending in the Langlade County Court, this Court finds it should not withhold its judgment on the substantive issues joined by the parties.

■ Analysis of the problem must begin with the so-called anti-injunction statute, 28 U.S.C. § 2283, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." It is not disputed that to grant the relief plaintiff seeks here would, in effect, stay the state court proceedings described above. In *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), however, the Supreme Court made clear that actions brought pursuant to 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343, are within the exception provision of § 2283 that prohibits enjoining state court proceedings "except as expressly authorized by Act of Congress." *Id.* at 242–43, 92 S.Ct. 2151.

■ Yet, the Court's holding in *Mitchum v. Foster, supra* does not end the inquiry here, for this Court recognizes that it is equally well settled that there is a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971).[4] Such special circumstances undoubtedly exist where the state law is " 'flagrantly and patently violative of express constitutional prohibitions,' " *id.* at 53, 91 S.Ct. at 755, or where irreparable injury is "both great and immediate," *id.* at 46, 91 S.Ct. 746. Moreover, if there is "the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved," *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973), then a federal court must allow the state forum to complete its work. These principles are arguably applicable to all state criminal and civil proceedings, at least where the civil proceedings are "more akin to a criminal prosecution than are most civil cases." *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975).

In *Huffman,* the Court had before it an Ohio public nuisance statute which defined a place exhibiting obscene films to be a nuisance, and provided for up to one year's closure for any place determined to be a nuisance, and the sale of personal property used in conducting the nuisance. After a successful state court nuisance proceeding was brought by state officials against a

---

4. The *Younger* Court articulated this "national policy" as "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. * * * What the concept does represent is a system in which there is sensitivity to the legitimate interest of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. * * * " 401 U.S. at 44, 91 S.Ct. at 750.

theater operator, the operator's successor commenced an action in federal district court under 42 U.S.C. § 1983, alleging that the use of the nuisance statute against it constituted deprivation of constitutional rights under color of state law. The Supreme Court held that under the circumstances the principles of abstention outlined in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in the context of ongoing state *criminal* proceedings were equally applicable to the civil action there under consideration. The case was remanded to the three-judge district court which had not ruled on the *Younger* issue.

The Court's opinion in *Huffman* turned, in large part, on the character of the state statute there under consideration in determining what treatment federalism and comity demanded of the federal courts. The Court found the nuisance action being scrutinized "a state proceeding which in important respects is more akin to a criminal prosecution than are most civil cases. The State is a party to the [state court] proceeding, and the proceeding is both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials. Thus, an offense to the State's interest in the nuisance litigation is likely to be every bit as great as it would be were this a criminal proceeding. Cf. *Younger v. Harris,* supra, 401 U.S., at 55 n.2 [91 S.Ct. 746 at 757] (Stewart, J., concurring). Similarly, while in this case the District Court's injunction has not directly disrupted Ohio's criminal justice system, it has disrupted that State's efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws." 420 U.S. at 604–605, 95 S.Ct. at 1208. Further, the Court expressly left open the question of the applicability of *Younger* principles in the context of civil litigation involving private parties, and rec-

ognized that "[s]trictly speaking, this element of *Younger* is not available to *mandate* federal restraint in civil cases." *Id.* at 604, 95 S.Ct. at 1208 (emphasis supplied).

■ We hold that under the circumstances presented here, this Court need not stay its hand in deference to the principles set forth in *Younger* and *Huffman.* The Wisconsin attachment statute presently before us is designed to aid private creditors and potential creditors in the ultimate collection of their alleged debts. No section of the Wisconsin Criminal Code is directly implicated or paralleled by the attachment device. Thus, this Wisconsin statute is undoubtedly more purely civil and private than the Ohio nuisance proceeding which the Court in *Huffman* effectively characterized as quasi-criminal. Our intervention here does not contain the element of federal interference with the State's legitimate interest in regulating the primary conduct of its citizens which concerned the *Huffman* court.

In this same vein we note that while certain county officials are named here as defendants, they are named for ministerial acts performed under the statutory framework of Chapter 266. The underlying controversy in this action is essentially between private parties. Therefore, the situation here differs importantly from that in *Huffman* where state officials were not nominal parties but were seeking to enforce by means of a civil action a state policy as embodied in the challenged Ohio statute.

■ Other distinguishing features of this case also militate strongly in favor of our decision here. Although the pleadings and motion described above have nominally been filed in the county court, the court itself, a party to this action, has taken no action with regard to this matter other than causing its seal to appear on the writs of attachment.[5] These matters have been be-

---

**5.** U. S. General's motion to vacate and quash the writ of attachment was filed about one year ago at the time of this writing. According to the stipulation of the parties, kept current by means of affidavit, no response to this motion has ever been filed, nor has the county court given any indication of a desire to decide the motion or bring the underlying controversy on for trial. Under the circumstances, this Court must assume that the County Court is waiting for this court to speak before any action is taken.

fore the county court for approximately one year at the time of this writing without any indication that a response to U.S. General's motion to required or that it will be brought on for hearing and decision. Thus, this Court has no alternative but to conclude that the parties have not, as a practical matter, been afforded the opportunity to have the federal questions presented decided by the Langlade County Court in a timely fashion. To this point the proceedings in state court have taken on a quasi-administrative quality, involving merely the ministerial actions of the clerk of court and sheriff. Cf. *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1974). Moreover, there is no possibility that disposing of plaintiff's claim on the merits at this juncture will substantially duplicate proceedings already had in state court. See *Huffman v. Pursue, Ltd., supra*, 420 U.S. at 608, 95 S.Ct. 1200. The prejudgment attachment of plaintiff's real estate has deprived it of the ability to transfer the property (or the proceeds held in lieu of the real estate) during the pendency of the underlying lawsuit. Such an immediate and continuing curtailment of a constitutionally cognizable property interest raises serious federal constitutional questions and deserves prompt consideration on the merits. See *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Dorsey v. Community Stores Corp.*, 346 F.Supp. 103 (E.D.Wis.1972). Cf. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). As will be discussed below the

Court finds Chapter 266 constitutionally deficient in many important respects.[6] This conclusion, when added to the other features of the case outlined above, thrust the instant matter outside the limits of the abstention doctrine. See *Younger v. Harris, supra*, 401 U.S. at 46, 53, 91 S.Ct. 746; *Gibson v. Berryhill, supra*, 411 U.S. at 577, 93 S.Ct. 1689; *Huffman v. Pursue, Ltd., supra*, 420 U.S. at 601–602, 95 S.Ct. 1200.

The recent decisions of this circuit in *Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir. 1975), and of the Supreme Court in *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976), are not contrary to this conclusion. *Ahrensfeld* involved a federal constitutional challenge to Illinois state court eminent domain proceedings, the court of appeals holding that abstention was appropriate where the federal claims could be properly adjudicated in the pending state proceedings and where the state statute under attack was susceptible of state court construction which would avoid or modify the constitutional questions. Eminent domain, a power intimately involved with state prerogative, *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), is certainly an area of high governmental and proprietary interest for the state. As pointed out above, the same cannot be said of the more purely private attachment statute at bar. Moreover, unlike attachment, the inherently local nature of eminent domain proceedings makes it a particularly unwise area for federal court interference. *Ahrensfeld v. Stephens, supra*, at 198 (and cases cited therein). Finally, the *Ahrensfeld* court's reliance on the doctrine of *Railroad Commission v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)[7] is inapplicable here since

---

**6.** We refrain from stating that Chapter 266 comes expressly within the exception in *Younger* for a statute " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " 401 U.S. at 53–54, 91 S.Ct. at 755. But we do not think that, literally, each "clause, sentence and paragraph" of a statute must be patently unconstitutional for a state statute to come within the exception the *Younger* Court was creating, as

long as the statute in question is manifestly inadequate on constitutional grounds in many important respects.

**7.** The abstention doctrine articulated in *Pullman* involved the question of whether Texas statutes authorized the Texas Railroad Commission to enter an order which had the effect of discriminating against black Pullman porters. The Court held that the issue of the limits of authority of the Commission was a matter of Texas state law, and that since the possible

we find below that Chapter 266 is clear and unambiguous.

*Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976) a case similar to the instant action, involved a constitutional attack on certain provisions of New York's prejudgment attachment statute. In a *per curiam* opinion the Court relied solely on *Railroad Commission v. Pullman Co., supra,* and its progeny in holding that since the New York courts could construe the statute so as to remove any constitutional problems, the federal courts should abstain from deciding the federal constitutional questions.[8] No mention is made by the Court of *Younger, Huffman,* or related cases. Since we are prepared to rule that the statute at bar will not admit of state judicial construction which would cure its constitutional defects, it is well settled that *Pullman* does not preclude federal court consideration of the underlying constitutional questions. *Harmon v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); *Chicago v. Atchison, Topeka & Santa Fe Ry.,* 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); *Doud v. Hodge,* 350 U.S. 485, 76 S.Ct. 491, 100 L.Ed. 577 (1956); and *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). We also note that *Pullman*-type abstention has never been applied by the Supreme Court when confronting an actual application of the challenged state statute. In *Pullman* itself, the issue before the Court concerned the subsequent application of the Texas Railroad Commission's order. And in *Carey v. Sugar, supra,* the controversy was confined to the scope of a post-seizure hearing which had not yet been held.

The instant case presents substantial questions pertaining to an alleged taking of plaintiff's property that has already been

accomplished. We need not abstain from addressing them.

## THE CONSTITUTIONALITY OF CHAPTER 266

In recent years the arsenal of prejudgment remedies traditionally afforded to plaintiffs by the states have come under close scrutiny by the courts. Thus, in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *North Georgia Finishing Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Supreme Court invalidated a Wisconsin prejudgment wage garnishment statute, Florida and Pennsylvania prejudgment replevin statutes, and a Georgia prejudgment garnishment statute respectively. And in *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Court upheld a carefully drawn Louisiana prejudgment sequestration statute. The principles articulated in these decisions dictate the substantive result in the case at bar.

■ At the outset we note that "[a]ny significant taking of property by the State is within the purview of the Due Process Clause," *Fuentes v. Shevin, supra,* 407 U.S. at 86, 92 S.Ct. at 1997, regardless of whether the property involved belongs to a consumer or a corporation functioning in a commercial setting. *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra,* 419 U.S. at 608, 95 S.Ct. 719. This undoubtedly includes real estate or other attachable property and the deprivation of the right to dispose of it or its proceeds during the pendency of the underlying lawsuit, all by writ of attachment issued in accordance with Chapter 266, Wis.Stats.

---

constructions of state law by the Texas courts did admit of an interpretation which would avoid the federal constitutional question, the federal courts should properly abstain.

**8.** The three-judge district court in *Carey v. Sugar,* which reached the merits and found the New York statute unconstitutional, rested its decision on that statute's failure to require the

attaching party's likelihood of success on the merits of the claim underlying the attachment to be litigated in the hearing to vacate a prejudgment attachment. In remanding, the Supreme Court found that a state court construction of the statute in question in conformity with constitutional requirements was not precluded.

**1312**

■ The Wisconsin Attachment Statute permits official seizures of property without prior notice and opportunity for hearing. All that need be done to obtain the writ is to accompany a request with the summons and complaint issued in the underlying action, an affidavit stating a basis for the writ, and the required bond. See §§ 266.02, 266.03 and 266.06.

In *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975) the Court characterized its holding in *Fuentes v. Shevin,* as follows:

" * * * Because the official seizures had been carried out without notice and without opportunity for a hearing *or other safeguard against mistaken repossession* they were held to be in violation of the Fourteenth Amendment." (emphasis added)

In the statute now before us there is no provision for notice and hearing prior to the attachment writ being issued and executed. Hence, under *Fuentes,* as interpreted in *North Georgia Finishing,* our inquiry becomes whether adequate alternative safeguards are present to prevent mistaken seizures of property. An examination of the statute reveals no such safeguards, but rather, four instances of significant constitutional deficiency in this regard.

First, § 266.03 permits issuance of an attachment writ upon a conclusory supporting affidavit. The subsection relevant to this action permits the affidavit to be made by the plaintiff or someone acting on his behalf, and requires merely an allegation that the defendant is indebted to the plaintiff in a sum greater than fifty dollars due upon a contract or judgment, and that the affiant knows, or has good reason to believe, one of several conclusions. There is no requirement that the facts supporting the conclusion be disclosed with specificity, or that such facts be established to the satisfaction of a neutral judicial officer. See *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra,* 419 U.S. at 607, 95 S.Ct. 719; cf. *Mitchell v. W. T. Grant Co., supra,* 416 U.S. at 605–606, 94 S.Ct. 1895. The

potential for abuse in this regard is readily apparent. Far from insuring against mistaken seizures by attachment, § 266.03 actually fosters such deprivations of property.

Second, the security required to be provided by the plaintiff before a writ shall issue is wholly inadequate. Section 266.06 unequivocally requires a bond of $250 as a minimum at the outset of any attachment proceeding. Neither the clerk of court nor the sheriff is vested with any discretion to ascertain whether such a bond affords the defendant adequate security before the writ is issued and executed. Indeed, § 266.02 of the statute dictates that the writ "shall be issued on the request of the plaintiff," and "shall require [the sheriff] to attach all the property of the defendant within his county or so much thereof as may be sufficient to satisfy the plaintiff's demand * * * ." Thus, there is no assurance at the outset that a defendant whose property is being attached *ex parte* will be afforded reasonable security given the value of the attached property. In the instant case attachment writs were issued for parcels of land with a stipulated value in excess of $1000 each, where the bond posted by the attaching party was the minimum $250. There is nothing in the statute to prevent this disparity from being even greater. It is true that if a defendant is dissatisfied with the amount of plaintiff's bond or with the surety, he may petition the court as provided in § 266.07, but this may take place only after the attachment writ has been issued and executed and upon no less than five days' notice to the plaintiff. No provision establishes that before a writ is issued and a defendant deprived of his property, he will be left with a reasonably adequate remedy in the event of a wrongful attachment. The result again is that the possibility of a mistaken seizure is enhanced. Cf. *Mitchell v. W. T. Grant Co., supra.*

Third, the statute fails to provide a defendant sufficient opportunity to obtain immediate relief from a wrongful issuance or execution of the writ. As outlined above, § 266.18 allows a defendant to move to

vacate or modify the writ of attachment for irregularity or other sufficient cause "upon five days' notice of motion." It is undisputable that the earliest relief obtainable by a defendant challenging the sufficiency of the pleading is five days. Moreover, there is no certain time period within which the statute requires such a motion to be heard and decided. Similarly, § 266.19, which allows a defendant to traverse the attachment if the pleading is sufficient on its face, provides only that the traverse must be tried before the principal action. Thus, there is no guarantee of prompt judicial determination of a defendant's motion to vacate or modify the writ, or a traverse of the attachment. In *Mitchell v. W. T. Grant Co., supra,* the Louisiana sequestration statute upheld by the Court provided that the debtor could seek dissolution of the writ *immediately,* a provision repeatedly held by the Court as being one of the important provisions in determining the constitutionality of the statute. See 416 U.S. at 606–609–611, 618, 94 S.Ct. 1895. Such provisions are absent here. Thus, the Wisconsin statute, which should seek to minimize the risk of a wrongful seizure is deficient in an important respect.

Lastly, and perhaps most importantly, the Wisconsin statute specifically precludes judicial consideration of a plaintiff's likelihood of success on the merits of the claim underlying the attachment at a trial of issues raised by a traverse to the writ. Section 266.19 states that:

"[w]ithin 10 days after notice of the issuing of a writ of attachment against his property or within the time in which he may answer the complaint, the defendant may, by special answer, deny the existence, at the time of the making of the attachment affidavit of the material facts stated therein *except the alleged liability and the amount thereof.* * * * *"* (Emphasis added)

See also *Gallun v. Weil,* 116 Wis. 236, 92 N.W. 1091 (1903). Therefore this case is clearly distinguishable from *Carey v. Sugar, supra,* in which the Supreme Court found that the statute under scrutiny could be construed to permit an adequate inquiry into the merits of plaintiff's underlying claim, and, therefore, instructed the lower court to abstain.[9]

Such an unequivocal elimination of consideration of the plaintiff's underlying claim on a challenge to the writ renders the process afforded therein deficient. See *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra; Mitchell v. W. T. Grant Co., supra; Fuentes v. Shevin, supra.* Without such a preliminary inquiry the possibility of an unnecessary, mistaken attachment are greatly increased. See the discussion in *Sugar v. Curtis Circulation Co.,* 383 F.Supp. 643, 648–650 (S.D.N.Y.1974) (three-judge; reversed *Carey v. Sugar, supra.*

Therefore, since the challenged statute fails to provide a pre-attachment hearing or other sufficient safeguards to prevent a mistaken seizure of property, we find the challenged provisions unconstitutional. *Fuentes v. Shevin, supra; North Georgia Finishing, Inc. v. Di-Chem, Inc., supra.*

IT IS THEREFORE ORDERED that plaintiff U. S. General's motion for declaratory and injunctive relief be and hereby is granted.

IT IS FURTHER ORDERED that Chapter 266, Wis.Stats., now Chapter 811, Wis. Stats., is declared to be unconstitutional, and that the defendants herein are hereby enjoined from any further action thereunder.

---

**9.** The language in the New York statute which the Supreme Court found to contain the possibility of construction allowing an inquiry into the merits of plaintiff's underlying claim were: " * * * If * * * the court determines that the attachment is unnecessary to the security of the plaintiff, it shall vacate the order of attachment. * * * *" *Carey v. Sugar,* 425

U.S. 73, at 76, 96 S.Ct. 1208, at 1209, 47 L.Ed.2d 587 (1976). We find the language before us in § 266.19 which states "except the alleged liability and the amount thereof" entirely unambiguous on this point, especially in view of *Gallun v. Weil,* 116 Wis. 236, 92 N.W. 1091 (1903), the leading Wisconsin decision on the question.