Robert C. and Laurie **TERRANOVA**

v.

**AVCO FINANCIAL SERVICES OF BARRE, INC., et al.**

Civ. A. No. 74–283.

United States District Court,
D. Vermont.

June 24, 1975.

Before OAKES, Circuit Judge, and HOLDEN and COFFRIN, District Judges.

Michael H. Lipson, Burlington, Vt., and John P. Wesley, of Vermont Legal Aid, for plaintiffs.

Robert G. Hayes, Burlington, Vt., for AVCO.

James L. Morse, Asst. Atty. Gen., for other defendants.

## OPINION

The sole issue presented in this case is the constitutionality of Rule 4.1 [1] of the Vermont Rules of Civil Procedure (Vt.R.Civ.P.) and its companion statutes, 12 Vt.Stat.Ann. §§ 3291–92, [2] which allow a plaintiff, upon commencement of a suit, to attach the defendant's real es-

I. Rule 4.1 Attachment.

(a) Availability of attachment. In connection with the commencement of any action under these rules (except an action for malicious prosecution, libel, slander, or alienation of affections), real estate . . . may . . . be attached and held to satisfy any judgment for damages and costs which the plaintiff may recover.

(b) Writ of attachment: Issuance.

(1) A writ of attachment of real estate, or of personal property where such property is not to be removed or taken into possession, shall be filled out by the plaintiff's attorney, as provided in subdivision (c) of this rule.

.    .    .    .    .

(c) Same: Form. The writ of attachment shall be dated and signed by the plaintiff's attorney, or, if the plaintiff has no attorney or the writ is issued under paragraph (2) of subdivision (b) of this rule, by the clerk. It shall contain the name of the court, the names and residences of the parties, the date of the complaint, and any order of approval issued under paragraphs (2)–(4) of subdivision (b) of this rule . . . and command him to attach the goods, chattels or estate of the defendant in the amount specified in the order of approval or, if there is no order, to the value of the plaintiff's demand for judgment together with a reasonable allowance for interest and costs, and to make due return of the writ with his doings thereon.

.    .    .    .    .

(e) Dissolution, Modification, or Discharge upon Motion.

(1) On 2 days [sic] notice to the plaintiff or on such shorter notice as the court may prescribe, a defendant whose property has been attached without the hearing on motion and notice provided by paragraph (3) of subdivision (b) of this rule may appear and move the judge who ordered issuance of the writ or the Presiding Judge of the court in which the action is pending for an order dissolving, modifying, or discharging the attachment. Such appearance shall not submit the

person of the defendant to the jurisdiction of the court. The judge shall proceed to hear and determine such motion as expeditiously as the ends of justice require. At the hearing, the plaintiff shall have the burden of justifying the continuance of the attachment. Unless the judge finds that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or property or credits attached by other writ of attachment or trustee process shown by defendant to be available to satisfy the judgment, he shall dissolve the attachment or modify it in amount, as appropriate. If the judge does not dissolve the attachment he may modify it or discharge it as provided in paragraph (2) of this subdivision.

(2) At any time before entry of final judgment, defendant may move the Presiding Judge of the court in which the action is pending for an order modifying or discharging any attachment. After notice and hearing, the judge may modify the attachment on such terms as to custody, use, insurance, or substitution of other security as are just if he finds that some or all of the property attached consists of . . . real . . . property necessary in earning a livelihood, or other property, the encumbrance or temporary deprivation of which would cause significant hardship to defendant. The judge may discharge the attachment in full upon the defendant's giving bond to the plaintiff in such sum and with such sureties as the judge directs, conditioned for the payment by the defendant of the damages and costs which the plaintiff may recover in the action.

2. § 3291. Service of copies of attachment

When real estate is attached, in addition to serving the party whose estate is attached, the officer shall leave a true and attested copy of the attachment, with a description of the estate so attached, in the office

tate without notice or a prior hearing and with no participation by a court or judge. Plaintiffs, on behalf of themselves and all those similarly situated, claim that these statutes violate the due process clause of the Fourteenth Amendment to the United States Constitution; they therefore request declaratory and injunctive relief against the enforcement of the attachment procedures pursuant to 28 U.S.C. §§ 2201–02 and 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1343(3) and 1331(a). Because the suit seeks to enjoin a state statute of state wide application, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284.

The facts as stipulated by the parties are as follows:

Plaintiffs, Robert C. and Laurie Terranova, are residents of Ferrisburg, Addison County, Vermont, and are owners of certain real property there. The property in question has at the present time a market value of $13,000, and apart from the writ of attachment at issue here the property is encumbered by a first mortgage having a balance payable of approximately $7,800.

On or about October 24, 1974, defendant AVCO Financial Services of Barre, Inc. (AVCO), prepared and signed a writ of attachment directed to plaintiffs' real estate in accordance with Vt.R.Civ. P. 4.1(a), (b)(1) and (c). AVCO then filed an unverified complaint and summons together with the writ of attachment in Vermont District Court on Oc-

tober 28, 1974, alleging money due and owing by plaintiffs in the amount of $1,629 on a promissory note dated November 5, 1973.[3]

On October 31, 1974, the writ of attachment was delivered by AVCO to defendant Chandler, the sheriff of Addison County, and then to defendant DeWitt, a deputy sheriff who delivered the writ to the town clerk of Ferrisburg. A copy of the writ was then formally recorded, as required by statute, note 2 *supra*. At no time were the plaintiffs provided with notice or an opportunity to be heard with respect to the attachment, and at no time prior to the attachment was the probable validity of AVCO's underlying claim reviewed by any judicial officer of the State of Vermont.

On the basis of the Supreme Court's decisions in *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337 (1969), all of which emphasized the necessity of judicial participation in connection with the granting of such prejudgment remedies, and with reliance upon a number of cases which have invalidated similar statutory schemes, *Bay State Harness Horse Racing and Breeding Association, Inc. v. PPG Industries, Inc.,* 365 F.Supp. 1299 (D.Mass.1973) (three-judge court);

---

where by law a deed of that estate is required to be recorded.

§ 3292. Recording by town or county clerk

When a copy of a writ of attachment, on which real estate is attached, is lodged in the office of a town or county clerk, such clerk shall enter in a book to be kept for that purpose the names of the parties, the date of the writ, the time when the court to which the same is returnable, the nature of the action, the sum demanded and the officer's return thereon.

3. AVCO's unverified complaint and request for writ of attachment were signed by its attorney; in so signing, the plaintiff's attor-

ney certifies that "to the best of his knowledge, information, and belief there is good ground to support it." Vt.R.Civ.P. 11. However, the Vermont rule does not require that the attorney have personal knowledge of the facts supporting the complaint or writ. As the Reporter's Notes to Vt.R.Civ. P. 11 state,

This rule . . . places the primary responsibility for accuracy of the pleadings and good faith in the use of process upon the attorney by requiring his signature on pleadings and process and subjecting him to the threat of disciplinary action for wilful violation of the rule.

*Gunter v. Merchants Warren National Bank,* 360 F.Supp. 1085 (D.Me.1973) (three-judge court); *Clement v. Four North State Street Corp.,* 360 F.Supp. 933 (D.N.H.1973) (three-judge court),[4] we conclude that the procedures here in issue are violative of the due process clause of the Fourteenth Amendment and that their continued enforcement should therefore be enjoined.

Rule 4.1 of the Vermont Rules of Civil Procedure was amended in direct response to the Supreme Court's decision in *Fuentes v. Shevin, supra,* which invalidated Florida's replevin procedures. The new rule provides *inter alia* that prior to virtually all *possessory* attachments, *i. e.,* attachments requesting that property "be removed or taken into possession," there be notice to the parties to be affected by the seizure and a limited hearing before a judge.[5] At the hearing, the party seeking the attachment is required to establish "that there is a reasonable likelihood that plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance or bond shown by the defendant to be available to satisfy the judgment."

Real estate attachments and other "non-possessory attachments" were conspicuously excluded from the notice and hearing requirements of Vt.R.Civ.P. 4.1. The Reporter's Notes to the 1973 Amendments to the Rules provide an explanation for distinguishing possessory and non-possessory attachments:

The Fuentes decision invalidated Florida and Pennsylvania replevin procedures which provided for the taking of personal property at the commencement of the action without notice to the defendant or hearing on the probable validity of plaintiff's claim. While Fuentes in terms applies only to replevin, its principles clearly govern possessory attachment of personal property, attachment on trustee process, and a range of other provisions for summary taking of personal property, as subsequent decisions of the lower federal courts have held. . . .

The application of Fuentes to attachments where tangible property is not taken into possession is less clear. While the opinion emphasizes protection of "the interest in continued possession and use" of property . . . it also points out that the due process clause of the 14th Amendment protects "any significant property interest" . . . which could arguably include the right to hold property with unencumbered title. . . .

---

4. *But see Central Security National Bank v. Royal Homes, Inc.,* 371 F.Supp. 476 (E.D. Mich.1974).

5. Rule 4.1(b)(2)–(3) provides as follows:
  (2) A writ of attachment of personal property that is to be removed or taken into possession shall be filled out as provided in subdivision (c) of this rule and issued to the plaintiff's attorney by the clerk of the court in the county where the action is pending or the property is located. Such writ shall issue only upon the order of a Superior or District Judge approving attachment for a specified amount found as provided in paragraph (3) or (4) of this subdivision. The order shall specifically state the grounds of its issuance and shall be incorporated in and made part of the writ.
  (3) Except as provided in paragraph (4) of this subdivision, an order of approval may

be issued only upon motion after five days [sic] notice to the defendant and hearing and upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance or bond shown by the defendant to be available to satisfy the judgment. The motion shall be filed with the complaint and shall be supported by an affidavit or affidavits meeting the requirements set forth in subdivision (i) of this rule. The motion and affidavit or affidavits, together with the notice of hearing thereon, shall be served upon the defendant in the manner provided in Rule 4 at the same time that the summons and complaint are served upon him.

The amendments to Rules 4.1, 4.2 and 64 are intended to provide the notice and hearing for possessory attachment of personal property, attachment on trustee process, and replevin that are now constitutionally required. These changes are simply in implementation of the mandate of Fuentes. The amendments do not, however, go beyond a narrow reading of that decision. Accordingly, under Rule 4.1 real property attachments and attachments of personal property by copy under 12 V.S.A. §§ 3251, 3255, are not subject to the notice and hearing requirements, because these attachments do not involve a deprivation of possession. If the subsequent course of decision in the federal courts indicates that Fuentes does extend to non-possessory attachments, Rule 4.1 can be readily amended to reflect that position.

More drastic changes in the law, such as the elimination of attachment and trustee process, or their limitation to cases of proven necessity are apparently not required by Fuentes, whatever their desirability as a matter of policy. Such action is left to the legislature in light of the long history of these remedies in Vermont and the potential economic effect of major changes in them.

To be sure, there is both a quantitative and qualitative difference between a possessory attachment which deprives an individual of *all* use of his property, and a real estate attachment which limits only specific uses of the property. But the legal significance of these distinctions is less clear. And as the Supreme Court said in *North Georgia Finishing, Inc., supra* at 4194, "We are no more in-clined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause."

Defendants argue that the differences between possessory and non-possessory attachments are such that the present case is not necessarily governed by the principles set down by the Supreme Court in *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra* (bank garnishment); *Fuentes v. Shevin, supra* (replevying of household goods); and *Sniadach v. Family Finance Corp., supra* (wage garnishment). Even *Mitchell v. W. T. Grant Co., supra,* which upheld a state sequestration statute, is not directly relied upon by defendants because it too involved an actual *seizure* and taking into possession of property. With a real estate attachment, defendants maintain, there is really no property deprivation at all, no "taking," so to speak, because the landowner still has what is referred to as the "full use and occupancy of the property." Plaintiffs maintain that there is a significant property interest involved in a real estate attachment since it may adversely affect the landowner's credit rating, and in addition make it difficult or impossible for the landowner to sell or mortgage the property.[6]

In deciding this threshold question, we cannot ignore the substantial economic effects which can result from the use of the real estate attachment in connection with the initiation of a suit. The attachment in question places a burden upon the real estate owner, a burden which is underscored by the fact that he must take affirmative action in court in order to dissolve the attachment. This, in addition to the fact that an attach-

**6.** Defendants counter with the argument that any such adverse effects upon a real estate owner will arise if and only if the owner actually attempts to sell or mortgage his property and that the burden should therefore be upon the person whose property is attached to prove such circumstances as have caused him injury sufficient to amount to a property deprivation. It is, however, indisputable that in effecting an attachment, a plaintiff secures important, if still only potential, rights in the property attached. This diminution of the landowner's rights in his property which can be dissolved only by the landowner's expending time and money in a judicial forum in our view constitutes a significant property deprivation.

ment impairs the market value and marketability or mortgageability of the real estate cannot be viewed as "insignificant" deprivations in a constitutional sense. Notwithstanding the fact that such effects may be only temporary,[7] they are nevertheless real. While the ownership of property cannot be simply defined nor its rights easily compartmentalized, consisting as it does of a collection of benefits, uses and duties, an attachment involves the curtailment of economically important property uses.

[2] The Supreme Court decisions in *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra; Mitchell v. W. T. Grant Co., supra; Fuentes v. Shevin, supra;* and *Sniadach v. Family Finance Corp., supra,* dictate that except in extraordinary situations[8] the prejudgment attachment of real estate belonging to an in-state resident[9] may be effected only after notice to the owner and a hearing, presided over by a judicial officer, at which hearing it must be determined that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance or bond shown by the defendant to be available to satisfy the judgment. In effect, then,

our decision treats real estate attachments as possessory attachments are already treated in Vermont.

To be sure, constitutional exegesis in the area of prejudgment remedies has run a somewhat uncertain course through the Supreme Court's split decisions from *Sniadach v. Family Finance Corp., supra,* to its most recent decision in *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra.* Thus we cannot be certain that our decision will be upheld, although it appears to us sound. *See Hutchinson v. Bank of North Carolina,* 392 F.Supp. 888 (M.D.N.C.1975) (three-judge court). We therefore limit the effect of the judgment ordered today to the parties in the case at bar and to prospective enforcement of the real estate attachment procedures at issue here. We take this course in order that the validity of all prior Vermont real estate attachments not be put in question. *Cf. Clement v. Four North State Street Corp., supra; Gunter v. Merchants Warren National Bank, supra.* In view of the Vermont Supreme Court's broad rule-amending power, 12 Vt.Stat.Ann. § 1, it should have no trouble amending Rule 4.1 well before this decision becomes final.

Parties to settle judgment order within 20 days.

---

7. A defendant may request a post-attachment hearing, but a decision in such a hearing may be delayed days or even weeks, as Vt. R.Civ.P. 4.1(e)(1) requires only that "the judge shall proceed to hear and determine such motion as expeditiously as the ends of justice require."

8. By an extraordinary situation, we make specific reference to danger of fraudulent transfer, substantial damage to or depreciation of the property or the like. *Cf.* Vt.R. Civ.P. 4.1(b)(4) which authorizes ex parte possessory attachments in such exceptional circumstances.

9. We express no view on the question of the availability of an ex parte prejudgment attachment which is necessary to bring an out-of-state resident under the jurisdiction of the Vermont courts. *Compare Jonnet v. Dollar Savings Bank of the City of New York,* 392 F.Supp. 1385 (W.D.Pa. Apr. 7, 1975), *with Long v. Levinson,* 374 F.Supp. 615 (S.D.Iowa 1974). *See generally* Note, Procedural Due Process—The Prior Hearing Rule and the Demise of Ex Parte Remedies, 53 B.U.L.Rev. 41, 43–44 (1973) ; Note, Quasi in Rem Jurisdiction and Due Process Requirements, 82 Yale L.J. 1023 (1973).