Claude BRIERE and Gladys Briere

v.

AGWAY, INC. and Stanley T. Williamson, Sr.

Civ. A. No. 76–41.

United States District Court, D. Vermont.

Jan. 12, 1977.

Jon R. Eggleston and David M. Yarnell, Kissane & Heald Associates, St. Albans, Vt., for plaintiffs.

Lawrence Miller and A. Hays Butler, Miller & Norton, Rutland, Vt., for defendant Agway, Inc.

Philip J. Fitzpatrick, Jeffersonville, Vt., for defendant Stanley T. Williamson, Sr.

Before OAKES, Circuit Judge, and HOLDEN and COFFRIN, District Judges.

COFFRIN, District Judge.

This action, brought pursuant to 42 U.S.C. § 1983,[1] challenges the constitutionality of Rule 4.1[2] of the Vermont Rules of Civil Procedure and its companion statute,

---

1. Jurisdiction is conferred upon the Court by 28 U.S.C. §§ 1343(3) and 1331(a).

2. The Rule reads in pertinent part:
   RULE 4.1. ATTACHMENT
   (a) *Availability of Attachment.* In any action under these rules (except an action for

malicious prosecution, libel, slander, or alienation of affections), real estate, goods and chattels, and other property may, in the manner and to the extent provided by law and by this rule, be attached and held to satisfy any judgment for damages and costs which the plaintiff may recover.

12 Vt.Stat.Ann. §§ 3251–52,[3] insofar as they provide for the nonpossessory prejudgment attachment of personal property.[4] Because this suit seeks to enjoin the operation of a

(b) *Writ of Attachment: Issuance.*

(1) . . . [A] writ of attachment of real estate or of personal property where such property is not to be removed or taken into possession, shall be filled out by the plaintiff's attorney, as provided in subsection (c) of this rule.

.　　.　　.　　.　　.

(c) *Same: Form.* The writ of attachment shall be dated and signed by the plaintiff's attorney, or, if the plaintiff has no attorney or the writ is issued under paragraph (2) of subdivision (b) of this rule, by the clerk. It shall contain the name of the court, the names and residences of the parties, the date of the complaint, and any order of approval issued under paragraphs (2)–(4) of subdivision (b) of this rule; be directed to any sheriff or constable in the state or to a person specially appointed to serve process under rule 4(c); *and command him to attach the goods, chattels or estate of the defendant in the amount specified in the order of approval* or, if there is no order, to the value of the plaintiff's demand for judgment together with a reasonable allowance for interest and costs, and to make due return of the writ with his doings thereon.

.　　.　　.　　.　　.

(e) *Dissolution, Modification, or Discharge upon Motion.*

(1) On 2 days notice to the plaintiff or on such shorter notice as the court may prescribe, a defendant whose property has been attached without the hearing on motion and notice provided by paragraph (3) of subdivision (b) of this rule may appear and move the judge who ordered issuance of the writ or the Presiding Judge of the court in which the action is pending for an order dissolving, modifying, or discharging the attachment. Such appearance shall not submit the person of the defendant to the jurisdiction of the court. The judge shall proceed to hear and determine such motion as expeditiously as the ends of justice require. At the hearing, the plaintiff shall have the burden of justifying the continuance of the attachment. Unless the judge finds that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or property or credits attached by other writ of attachment or trustee process shown by defendant to be available to satisfy the judgment, he shall dissolve the attachment or modify it in amount, as appropriate. If the judge does not dissolve the attachment he may modify it or discharge it as provided in paragraph (2) of this subdivision.

(2) At any time before entry of final judgment, defendant may move the Presiding Judge of the court in which the action is pending for an order modifying or discharging any attachment. After notice and hearing, the judge may modify the attachment on *such terms as to custody, use, insurance, or* substitution of other security as are just if he finds that some or all of the property attached consists of domestic or personal articles or furnishings in defendant's residence, an automobile used for personal transportation, real or personal property necessary in earning a livelihood, or other property, the encumbrance or temporary deprivation of which would cause significant hardship to defendant. The judge may discharge the attachment in full upon the defendant's giving bond to the plaintiff in such sum and with such sureties as the judge directs, conditioned for the payment by the defendant of the damages and costs which the plaintiff may recover in the action.

The attachment in this case was made in accordance with Rule 4.1(b)(1).

3. 12 Vt.Stat.Ann. §§ 3251–52 read as follows:

§ 3251. *Attachment or levy of execution by filing*

When personal property is taken upon a writ of attachment or execution, the officer serving such process may lodge a copy of the same, with his return, in the office or offices proper for the filing of a financing statement to perfect a security interest in such property under *section 9–401 of Title 9A. Such lodgment shall hold the property against all subsequent sales, attachments or executions as if it had been actually removed and taken into the possession of the officer, and different officers thereafter may serve in like manner other writs of attachment or execution so as to create a valid subordinate lien upon the* same property. Where such process is required by this section to be lodged in any office other than that of the town clerk in the town where the property is found, it shall be sufficient if the officer sends a copy of the process by registered or certified mail, return receipt requested to the appropriate office.

§ 3252. *Recording by clerk*

When a copy of a writ of attachment upon which personal property is attached is lodged in the office of a town clerk, he shall enter in a book to be kept by him, in alphabetical order, the names of the parties, the date of the writ, the time when and the court to which the same is returnable and the amount demanded.

4. We considered Rule 4.1 and its companion statute 12 Vt.Stat.Ann. §§ 3291–92, as they apply to real estate attachments in *Terranova*

state statute on the ground of unconstitutionality, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284.[5] Issues other than the question of constitutionality remain for later resolution by a single judge.

The facts as derived from stipulations of the parties and brief testimony at the hearing are as follows: [6]

Plaintiffs, Claude and Gladys Briere, are residents of the Town of Cambridge, Lamoille County, Vermont, and are the owners of certain real and personal property there. Much of that property, both real and personal, was employed in the operation of a dairy farm in Cambridge. The value of the personal property according to the testimony of plaintiff Claude Briere was approximately $40,000.

Agway, Inc. ("Agway") filed suit in Vermont Superior Court on September 18, 1975, against the plaintiffs herein and Loren and Dianne Rogers, alleging a debt due to it in the amount of $4,618.81. That sum represents certain purchases of grain and other farm supplies, charged to the account of Loren Rogers, and the service charges assessed to the same account.[7]

The Brieres made plans to sell much of the property in question at a "farm auction" which was advertised in a local newspaper. After the appearance of the advertisement, but prior to the date of the farm auction, which was to be held on September 19, 1975, a representative of Agway made demand on Claude Briere for the sum alleged to be owing. Mr. Briere informed the representative that he had not made the purchases giving rise to the debt and that, if any debt had been incurred, it was the responsibility of Loren and Dianne Rogers.

On or about September 18, 1975, Agway's attorney, Richard L. Seymour, delivered to defendant Stanley T. Williamson, Constable for the Town of Cambridge, a writ of attachment that had been prepared and signed by Mr. Seymour and another attorney,[8] in accordance with Vt.R.Civ.P. 4.1(a), (b)(1), and (c). The writ of attachment was directed to all real and personal property, to the value of $6,000, belonging to the four defendants in the Superior Court suit. At the request of Mr. Seymour, defendant Williamson then formally recorded the writ of attachment in accordance with 12 Vt.Stat. Ann. § 3252. After the recording, Mr. Seymour drove defendant Williamson to the Brieres' farm where he served the Brieres with copies of the summons, complaint and writ of attachment in the Superior Court action. At no time prior to the attachment was the probable validity of Agway's claim against plaintiffs reviewed by any judicial officer of the State of Vermont, nor were

---

v. *AVCO Financial Services, Inc.*, 396 F.Supp. 1402 (D.Vt.1975). The Rule and associated statute were found unconstitutional. *See* note 10 and accompanying text, *infra.*

5. 28 U.S.C. § 2281 was repealed, effective August 12, 1976. However, the repeal does not apply to any action commenced on or before that date. Pub.L.No.94–381, §§ 1, 7 (Aug. 12, 1976). This action was commenced by a complaint filed February 19, 1976, and accordingly the constitutional issue must be decided by a three-judge court.

6. The parties have adopted stipulations of fact for use in the determination of the issue of constitutionality. The stipulations were expressly limited to that purpose and are not intended to apply in later phases of this litigation.

7. In connection with the constitutional issue, it is unnecessary for us to resolve any legal or factual dispute concerning liability for payment of the Agway account and we leave this to later proceedings. However, it appears that the controversy may revolve around a purported lease of the farm, farm equipment and dairy herd by the plaintiffs, in September, 1974, to their daughter and son-in-law, Diane and Loren Rogers, and certain purchases made thereafter from Agway by Loren. We also note that Agway has filed a counterclaim in the present action, which eventually must be resolved, asserting that the plaintiffs will be unjustly enriched if they are not required to pay for supplies that allegedly benefitted their farm.

8. Rule 4.1(c) of the Vermont Rules of Civil Procedure requires that the "writ of attachment shall be dated and signed by the plaintiff's attorney." The reason for the second signature in this case is not readily apparent.

plaintiffs provided with notice and an opportunity to be heard.

On September 19, 1975, the day of the Brieres' farm auction, Mr. Seymour met defendant Williamson, drove him to the farm auction and prepared a statement for him to read at the auction. The statement, to the general effect that all property to be sold at the auction was subject to a writ of attachment, was read by Mr. Williamson to those in attendance.[9] Plaintiffs claim that by virtue of the alleged unconstitutional attachment and the actions of Agway through its attorney and Mr. Williamson, they were unable to receive a full return upon their personal property sold at auction.

This same three-judge Court has had occasion to rule on the procedures in question as they apply to real estate attachments.[10] In *Terranova v. AVCO Financial Services, Inc.*, 396 F.Supp. 1402 (D.Vt.1975), we held that Vt.R.Civ.P. 4.1[11] and 12 Vt.Stat.Ann. §§ 3291–92, which provide procedures for the attachment of real estate, were violative of the due process clause of the fourteenth amendment and that their continued enforcement should be enjoined. Both defendants would have us reconsider the reasoning of *Terranova*. If we are disinclined to do so, defendants urge that we should distinguish between realty and personalty as they are affected by nonpossessory attachments. Defendant Agway also suggests that the Court should abstain from deciding this matter.[12]

The suggestion that this Court should abstain is based on the holdings of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). *Younger* articulated a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances," 401 U.S. at 41, 91 S.Ct. at 749, in the context of a suit to enjoin a pending state criminal proceeding.[13] *Huffman* extended the doctrine of *Younger* to apply to a civil case that was "more akin to a criminal prosecution than are most civil cases," 420 U.S. at 604, 95 S.Ct. at 1208, but left open the question of the propriety of abstention based on *Younger* in the case of civil litigation involving private parties. In such case, the rationale of *Younger*, to the extent that it relies on the traditional reluctance of courts to interfere with a criminal prosecution in another court, is less persuasive.

It is clear that in the case at bar the plaintiffs are seeking to enjoin neither a state criminal proceeding nor a proceeding even remotely analogous to a criminal action. Thus, the branch of the *Younger-Huffman* rationale described above does not apply in this case. Further, a finding of unconstitutionality in this case would not perforce lead to a substantial interference with the pending processes of the Vermont Superior Court; rather, the state litigation may continue without interruption. A decision of unconstitutionality in this case will

---

**9.** Defendant Williamson asserts that all of the acts performed by him were at the request and direction of Mr. Seymour.

**10.** The procedures for the nonpossessory attachment of personalty are virtually identical to those for realty. *See* Vt.R.Civ.P. 4.1; *compare* 12 Vt.Stat.Ann. §§ 3251–52 *with* 12 Vt. Stat.Ann. §§ 3291–92.

**11.** We note that the language of the current Rule 4.1 is not identical to that upon which we ruled in *Terranova*. The substance of its amendment, however, is in no respect pertinent to our decision today.

**12.** We find much support for our analysis on this issue in *United States General, Inc. v.*

*Arndt*, 417 F.Supp. 1300 (E.D.Wis.1976), which we find to be persuasively reasoned.

**13.** The decision in *Younger* involved an extensive explanation of the policy of the Federal anti-injunction statute, 28 U.S.C. § 2283, *see* 401 U.S. at 43–54, 91 S.Ct. 746, however, that decision did not interpret the independent force of the anti-injunction statute itself, 401 U.S. at 54, 91 S.Ct. 746. It should be noted that suits under 42 U.S.C. § 1983 fall within an express exception to the statutory prohibition against enjoining state court proceedings. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

simply require the dissolution of the writ of attachment, which, according to the law of Vermont, is prepared and executed without any participation on the part of any judicial official. Another factor that was of import in *Younger* and *Huffman*—avoidance of duplication of proceedings—does not militate against deciding the case at hand. *See Huffman, supra*, 420 U.S. at 608, 95 S.Ct. 1200. Here there will be no duplication of proceedings if we do not abstain.[14]

■ In sum, we do not think this case to be appropriate for abstention on the basis of *Younger* and *Huffman*, because this proceeding is entirely civil in nature, and does not directly interfere in the judicial processes of the State of Vermont.[15] "Such an immediate and continuing curtailment of a constitutionally cognizable property interest [as is involved here] raises serious federal constitutional questions and deserves prompt consideration on the merits." *United States General, Inc. v. Arndt*, 417 F.Supp. 1300, 1310 (E.D.Wis.1976).

■ Although defendants have not argued on the basis of *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976), it is appropriate that we discuss that case because of its apparent similarity to the case at bar. *Carey* involved a constitutional attack on the New York statute providing for the prejudgment attachment of real estate. The Supreme Court held that the New York courts could interpret the statute so as to obviate any constitutional infirmities. Relying on the doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Court directed a three-judge court to abstain from decision until the parties had had an opportunity to obtain a construction of the New York law from the New York courts.[16] We find it significant that *Younger* and *Huffman* were not cited in *Carey* and are inclined to construe the absence of discussion of these cases in *Carey* as implying the general lack of application of their dogma to cases such as this.

Further, the holding of *Carey* does not control in this litigation. *Carey* employed *Pullman* abstention where an interpretation of the statute's post-attachment hearing procedure might cure the statute's constitutional defect. An appropriate interpretation of the post-attachment hearing procedure was capable of saving the New York statute from unconstitutionality because other constitutional protections already existed in the New York attachment procedures. The procedures provide that the order of attachment must issue from a judge based on an affidavit or other written evidence of the debt and after an undertaking is given by the plaintiff. *Carey, supra*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587; *see Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 605–06, 609–10, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Vermont's statute has no such protections. Here, although a minor portion of our decision may be based on an interpretation of Vt.R.Civ.P. 4.1(e), which corresponds to the statute at issue in *Carey*, no conceivable interpretation of that portion of Rule 4.1 or the Rule as a whole will remedy its constitutional infirmities.[17]

The major thrust of the argument of both defendants on the merits is that the

---

**14.** *See United States General, Inc. v. Arndt*, 417 F.Supp. 1300, 1310 (E.D.Wis.1976). Moreover, should we abstain there might be little gained but delay, as we may well be revisited with the identical issue here presented after the full state proceedings have transpired, if plaintiffs properly preserve the constitutional issue. *See England v. Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

**15.** *See also, Hernandez v. Danaher*, 405 F.Supp. 757 (N.D.Ill.1975) (three-judge court), *probable jurisdiction noted*, 426 U.S. 918, 96 S.Ct. 2622, 49 L.Ed.2d 371 (1976), holding that the "*Younger* rule of noninterference" did not

pose a barrier to decision, since there the "challenged statute [was] patently and flagrantly" unconstitutional. 405 F.Supp. at 760.

**16.** Abstention under *Pullman* obtains neither where the relevant state law is settled, nor where it is clear that the state statute is unconstitutional no matter how it may be interpreted by the state courts. *See* C. Wright, Federal Courts § 52 at 196–97 (1970).

**17.** *See Wisconsin v. Constantineau*, 400 U.S. 433, 438–39, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

decision of this Court in *Terranova v. AVCO Financial Services, Inc.*, 396 F.Supp. 1402 (D.Vt.1975), is incorrect. In presenting their cause, defendants argue the difference between possessory and nonpossessory attachments. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), upon which *Terranova* was based, all involved possessory attachments. In *Terranova* we held that a nonpossessory attachment, while it may involve a somewhat lesser interference with property rights, does constitute a cognizable interference with property rights that are amenable to constitutional protection. 396 F.Supp. at 1406. In arguing the principles of *North Georgia Finishing, Mitchell, Fuentes* and *Sniadach*, defendants advance no arguments that we did not consider in *Terranova*. We, therefore, are disposed to follow our former reasoning.[18]

Two more arguments of lesser dimension remain to be considered. First, the defendants rightly assuming that we would be loath to depart from *Terranova*, have asked us to distinguish between the realty involved in *Terranova* and the personalty here involved. In answer, we again quote from *North Georgia Finishing*. "We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause." 419 U.S. at 608, 95 S.Ct. at 722, *quoted in Terranova, supra*, 396 F.Supp. at

1406. We grant that there are some obvious differences between real estate and personalty with regard to the alienability or other disposition of such property when under a writ of attachment. However, as this case demonstrates, the existence of a nonpossessory attachment on personalty, as well as one on realty, can result in the "curtailment of economically important property uses." *Terranova, supra*, 396 F.Supp. at 1407. One needs little imagination to envision the deleterious effect of Mr. Williamson's announcement at the auction on plaintiffs' right to dispose of their property. It is clear that other property uses, such as the ability to secure credit on the basis of personalty, can also be profoundly affected by a nonpossessory attachment of personalty. These effects apply equally to realty and personalty. Thus, while there may be some differences in the effects of real estate attachments, as opposed to personal property attachments, these differences are not so substantial as to require a departure from our holding in *Terranova*.

■ Finally, Agway argues that this case presents an "extraordinary situation" in which a prejudgment remedy, without the entire panoply of due process safeguards, is appropriate. *See Sniadach, supra*, 395 U.S. at 339, 89 S.Ct. 1820; *Terranova, supra*, 396 F.Supp. at 1405. But such extraordinary situations must be "truly unusual" and do not exist without the following factors: (1) important governmental or public interest in permitting the seizure, (2) special need for prompt action, and (3) a government official applying standards of a narrowly drawn statute.[19] *Calero-Toledo v. Pearson*

---

**18.** Defendant Williamson urges that *McKay v. McInnes*, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929), mandates the constitutionality of the Vermont attachment procedures. *McKay* upheld Maine's prejudgment real estate attachment law, and was cited with apparent approval in *Mitchell, supra*, 416 U.S. at 613–14, 94 S.Ct. 1895. It was, however, a per curiam affirmance without opinion on the authority of *Coffin Bros. & Co. v. Bennett*, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928) and *Ownbey v. Morgan*, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921). *Fuentes* limited *McKay* to holding no more than was established in *Coffin Bros.* and

*Ownbey.* 407 U.S. at 91 n. 23, 92 S.Ct. 1983. See the discussion of *McKay* in *The Oronoka*, 393 F.Supp. 1311, 1316 n. 9 (D.Me.1975). Whatever the authority of *McKay* in light of recent cases, we hesitate to rely upon it in a case in which we are able to reason from the more recent Supreme Court cases of *North Georgia Finishing, Mitchell, Fuentes*, and *Sniadach*. Those cases have more highly refined the concept at issue here, and provide the Court with considerably more guidance than does *McKay*.

**19.** Rule 4.1(b)(4) of the Vermont Rules of Civil Procedure is intended to be such a statute.

*Yacht Leasing Co.,* 416 U.S. 663, 678–80, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Fuentes, supra,* 407 U.S. at 90–91, 92 S.Ct. 1983. In this case the facts do not indicate any intention on the part of the Brieres to conceal or otherwise dispose of their assets or the proceeds thereof nor do they indicate any other unusual circumstances.[20] This is not a case involving an "extraordinary situation."

The Court recognizes that the constitutionality of nonpossessory attachment procedures, such as those presented by Vt.R. Civ.P. 4.1, is a much discussed and unsettled issue. *See Terranova, supra,* 396 F.Supp. at 1407; *compare United States General, Inc. v. Arndt,* 417 F.Supp. 1300 (E.D.Wis.1976) (three-judge court); *Hutchison v. Bank,* 392 F.Supp. 888, 894 (M.D.N.C.1975) (three-judge court); *Bay State Harness Horse Racing and Breeding Association, Inc. v. PPG Industries, Inc.,* 365 F.Supp. 1299 (D.Mass.1973) (three-judge court); *Gunter v. Merchants Warren National Bank,* 360 F.Supp. 1085 (D.Me.1973) (three-judge court); *Clement v. Four North State Street Corp.,* 360 F.Supp. 933 (D.N.H.1973) (three-judge court); *with Hansen v. Weyerhaeuser Co.,* 526 F.2d 505 (9th Cir. 1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976); *In re Thomas A. Cary, Inc.,* 412 F.Supp. 667 (E.D.Va.1976); *The Oronoka,* 393 F.Supp. 1311 (D.Me.1975) (Gignoux, J., questioning *Gunter, supra* ); *Brook Hollow Associates v. J. E. Greene,*

*Inc.,* 389 F.Supp. 1322 (D.Conn.1975); *and Central Security National Bank v. Royal Homes, Inc.,* 371 F.Supp. 476 (E.D.Mich. 1974). Although we have decided to extend our decision in *Terranova* on the basis of the reasoning therein, we feel it desirable to discuss the view of at least one court that has interpreted *Mitchell* to require the upholding of a prejudgment nonpossessory attachment statute. Judge Gignoux in *The Oronoka,* 393 F.Supp. 1311 (D.Me.1975) questioned the continuing vitality of *Gunter v. Merchants Warren National Bank,* 360 F.Supp. 1085 (D.Me.1973), and upheld the constitutionality of a Maine rule, substantially similar to Vermont's, permitting prejudgment attachment of real estate. In so holding, Judge Gignoux relied upon *Mitchell* and the Supreme Court's summary affirmance in *Spielman-Fond, Inc. v. Hanson's, Inc.,* 379 F.Supp. 997 (D.Ariz.1973) (three-judge court), *aff'd,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). *Spielman-Fond* upheld an Arizona mechanic's and materialmen's lien statute, on the ground that the filing of such a lien "does not amount to a taking of a significant property interest."[21] 379 F.Supp. at 999. Judge Gignoux likewise held that the imposition of a prejudgment real estate attachment lien is not a deprivation of a significant property interest.

We, of course, cannot ignore the authority of *Spielman-Fond* merely because it in-

The rule allows a writ of attachment to be issued ex parte upon a finding by the court of a reasonable likelihood of success on the merits and upon the showing of certain delineated special circumstances. Specifically, the plaintiff must show either (1) that the person of the defendant is not subject to the jurisdiction of the court, or (2) that there is a clear danger that the defendant, if notified, will remove from the state or conceal attachable property, leaving insufficient assets to satisfy a judgment, or (3) that there is an immediate danger that the defendant will damage, destroy or sell attachable property, leaving insufficient assets to satisfy a judgment. Further, the existence of these circumstances must be supported by an affidavit or affidavits setting forth specific facts based on the affiant's personal knowledge.

**20.** Defendant Agway's briefs and arguments contain vague inferences that plaintiffs would

be inclined to accelerate the proposed auction, conceal the proceeds thereof or otherwise dispose of the property in issue if they were to receive notice and a hearing on the attachment. On the basis of the information available to the Court, these inferences appear highly speculative. Indeed, one can scarcely conceive of a means less adaptable to the concealment of assets than their sale at a publicly announced auction.

**21.** We note in passing that the Arizona statutes in question in *Spielman-Fond* provide certain protections to a property owner that are not present in the Vermont procedure. Before the lien becomes effective, a statement of the facts surrounding the debt must be given under oath. Ariz.Rev.Stat.Ann. § 33–993. Also, the property owner has a *right* to discharge the lien by filing a bond. Ariz.Rev.Stat.Ann. § 33–1004.

volved a summary affirmance by the Supreme Court. *Hicks v. Miranda*, 422 U.S. 332, 344–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Doe v. Hodgson*, 478 F.2d 537, 539 (2d Cir.), *cert. denied*, 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973). We do, however, find that case to be distinguishable from the one at bar. One major distinguishing factor is that in *Spielman-Fond*, like *Mitchell*, there is some pre-existing property right or relationship that gives the creditor special rights and a special interest in the particular property at issue. In *Mitchell* it was a pre-existing lien on the property in question; in *Spielman-Fond* it was the materials and labor, as evidenced by obvious tangible improvements, that were extended for the debtor's benefit. Here there is no such relationship. This difference may well lead to differing conclusions about the substantiality of property interests involved in the specific cases.

This special relationship is one of the several factors that are weighed in determining the extent of the process that is due. *See Mitchell, supra*, 416 U.S. at 607–08, 94 S.Ct. 1895. The rationale of *Spielman-Fond* notes that a mere hindrance to alienability is not a significant property interest. But the facts of this case indicate that such attachments may involve more than a mere hindrance to alienability. While the record does not reflect facts to directly support this conclusion, it is a logical assumption that continued ownership of the property in question could have been a substantial burden to the Brieres and its sale a necessity. If that were the case, plaintiffs would have been faced with the choice of either retaining property that has become burdensome, or selling it for less than it would otherwise bring because it is encumbered by a writ of attachment, issued without proper protection of their interests.

Thus, we respectfully disagree with Judge Gignoux's reasoning and we conclude that *Spielman-Fond* does not require us to find the rule in question here constitutional.

Finally, we grant that Vt.R.Civ.P. 4.1(e) provides some protection to the plaintiffs, but that is simply not enough. *See Terranova, supra*, 396 F.Supp. at 1407 n. 7.

 We, therefore, hold that Vt.R.Civ.P. 4.1 and 12 Vt.Stat.Ann. §§ 3251–52 are unconstitutional to the extent that they allow prejudgment nonpossessory attachment of personal property without adequate due process safeguards.[22] For reasons stated in *Terranova*, the judgment today shall apply only to the parties at bar and to the prospective enforcement of the procedures at issue here. *See* 396 F.Supp. at 1407.

It is so ORDERED.

---

**22.** *See United States General, Inc. v. Arndt*, 417 F.Supp. 1300 (E.D.Wis.1976).