Terry **FULLER** et al., Plaintiffs,

v.

Nancy **HURLEY**, Defendant.

Civ. A. No. 79–0231–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

March 2, 1983.

W. Challen Walling, James P. Jones, Abingdon, Va., for plaintiffs.

Nancy Hurley, pro se.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiffs, Terry Fuller and United Coal Company, have brought this suit under 42 U.S.C. § 1983, alleging violations of plaintiff Fuller's constitutional rights through the operation of Virginia's attachment statute. Specifically, plaintiffs state that Fuller's right to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution has been violated. In addition, they argue that Virginia's attachment statute[1] violates 15 U.S.C. § 1673[2] and is therefore void under

---

1. If any person have a claim, legal or equitable, to any specific personal property, or a like claim to any debt, including rent, whether such debt be due and payable or not, or to damages for breach of any contract, express or implied, or to damages for a wrong, and such claim exceed twenty dollars, exclusive of interest, he may sue out an attachment therefor on any one or more of the grounds stated in § 8.01–534, except that if the claim be for a debt not due and payable no attachment shall be sued out when the only ground for the attachment is that the defendant, or one of the defendants against whom the claim is, is a foreign corporation, or is not a resident of this Commonwealth, and has estate, or has debts owing to such defendant, within this Commonwealth. Va. Code Ann. § 8.01–533 (1978).

2. 15 U.S.C. § 1673. Restriction of Garnishment

*Maximum allowable garnishment.* (a) Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 percentum of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less.

In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

Exceptions

(b)(1) The restrictions of subsection (a) of this section do not apply in the case of

(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review.

(B) any order of any court of the United States having jurisdiction over cases under chapter 13 of Title 11.

(C) any debt due for any State or Federal tax.

(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 percentum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 percentum of such individual's disposable earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the 50 percentum specified in clause (A) shall be deemed to be 55 percentum and the 60 percentum specified in clause (B) shall be

Article VI, cl. 2 of the United States Constitution, and, as a pendent matter, the statute was applied in violation of Va.Code Ann. § 34–29 (Cum.Supp.1979).[3] Jurisdiction is predicated upon 28 U.S.C. § 1343.

The case is currently before the court on the Commonwealth's motion to dismiss on the following grounds: (1) the court lacks jurisdiction over the complaint because it fails to set forth the requisite state action necessary to support a claim for relief under 42 U.S.C. § 1983, or, because the court should abstain on the basis of equity, comity, and federalism; (2) the complaint fails to state a claim upon which relief can be granted as a matter of law; and (3) the court lacks jurisdiction over the pendent state claim because it lacks jurisdiction over the federal claims, or, alternatively, because no federal claims have been stated.

## I. FACTS

Terry D. Fuller is a Kentucky resident who works daily in Virginia in his employment as a truck driver with Wellmore Coal Corporation. He has been employed by Wellmore since October 30, 1978. On or about July 28, 1979, Fuller purchased a car from Nancy Hurley, d/b/a Hurley Auto Sales for the price of $875.00, paying $400.00 down and giving Hurley a lien on the vehicle to secure the remaining $475.00. Fuller entered into a conditional sales contract with Hurley which required Fuller to pay Hurley $125.00 every two weeks.

On August 13, sixteen days after the sale was completed, Hurley obtained a writ of attachment against Fuller and United Coal Company, Fuller's employer, for the outstanding balance, $475.00. The attachment was issued by a magistrate in Buchanan County, Virginia, upon Hurley's petition

deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

*Execution or enforcement of garnishment order or process prohibited*

(c) No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section.

3. § 34–29. *Maximum portion of disposable earnings subject to garnishment.*—(a) Except as provided in subsection (b), the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed the lesser of the following amounts:

(1) Twenty-five per centum of his disposable earnings for that week, or

(2) The amount by which his disposable earnings for that week exceed thirty times the federal minimum hourly wage prescribed by § 206(a)(1) of Title 29 of the United States Code in effect at the time earnings are payable.

(b) The restrictions of subsection (a) do not apply in the case of

(1) Any order of any court for the support of any person.

(2) Any order of any court of bankruptcy under chapter XIII of the Bankruptcy Act.

(3) Any debt due for any State or federal tax. In the case of earnings for any pay period other than a week, the State Commissioner of Labor and Industry shall by regulation prescribe a

multiple of the federal minimum hourly wage equivalent in effect to that set forth in this section.

(c) No court of the State may make, execute, or enforce any order or process in violation of this section.

The exemptions allowed herein shall be granted to any person so entitled without any further proceedings.

(d) For the purposes of this section

(1) The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

(2) The term 'disposable earnings' means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld, and

(3) The term 'garnishment' means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

(e) Every assignment, sale, transfer, pledge or mortgage of the wages or salary of an individual which is exempted by this section, to the extent of the exemption provided by this section, shall be void and unenforceable by any process of law.

(f) No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness.

alleging that Fuller was a nonresident and that he was about to remove his assets from the jurisdiction, both of which are statutory grounds for an attachment to issue. *See* Va.Code Ann. § 8.01–533 (Repl.Vol.1977). Pursuant to the writ, United Coal Company withheld all of Fuller's wages for the pay period, which were insufficient to satisfy the attachment. Judgment was then entered by the General District Court in Buchanan County on September 24 in the amount withheld by United ($51.66, plus $6.00 costs). This action left Fuller with no funds for daily living expenses or to pay his debts.

Hurley then obtained another attachment on September 27, 1979, in the amount of $417.13. Hurley's petition simply stated that the writ was requested on a "past due account" "due and payable on a past due day." The writ was issued on these conclusory allegations. The magistrate did not inquire into the validity of the debt nor did Hurley post bond before the writ was issued. Pursuant to the writ, once again, Fuller's entire pay of $180.17 due him on October 5, 1979 was withheld. Again, this action left Fuller with no funds whatsoever for daily living expenses. At no time was Fuller given notice that the attachments were being obtained against him nor was he given notice of the hearings in regard to the attachments.

It was at this point that the plaintiffs appeared before this court asking for a temporary restraining order to enjoin the attachment. The order was issued by this court on October 18, 1979, after a hearing on the matter on that same day. A preliminary injunction was subsequently entered on October 29, 1979. Defendant Hurley has also been enjoined from obtaining any later prejudgment attachment on plaintiff's debt.

The Commonwealth, not being an original party to this action, was brought in by the court under 28 U.S.C. § 2403, for argument at the permanent injunction hearing on the question of the constitutionality of the attachment statute.

The issues having been briefed and argued, the court is now ready to rule on the Commonwealth's motion to dismiss.

## II. THE § 1983 CLAIM

### a. STATE ACTION

The Commonwealth first argues that the case should be dismissed because plaintiff has failed to show one of the essential elements necessary to a § 1983 claim: that defendant Hurley acted "under color of state law." Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Therefore, first, plaintiff must prove a deprivation of a right "secured by the Constitution and the laws" of the United States. Second, plaintiff must show that defendant Hurley acted "under color of any statute" of the Commonwealth of Virginia. *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978).

The constitutional claim alleged in the case at bar revolves around the Fourteenth Amendment right "to be free from state deprivations of property without due process of law." *Flagg,* 436 U.S. at 156, 98 S.Ct. at 1733. Central to this claim, of course, is that the deprivation of property be directly attributable to the Commonwealth of Virginia. The due process provision of the Fourteenth Amendment only protects against infringement by governments and not deprivations by private parties. *See Flagg, supra.*

Often the two requirements for a § 1983 action are confused when a Fourteenth Amendment claim is stated,[4] because

---

**4.** In a post-*Flagg* decision, a panel of the Fourth Circuit Court of Appeals equated the under color of state law requirement of 42 U.S.C.

the right secured does contain this "state action" element, which is very similar to the "under color of state law" requirement of § 1983. The concepts are analytically distinct, however:[5] state action "focuses on whether conduct is such that it 'may fairly be attributed to' the person who committed the deprivation acted or purported to act by authority conferred by the state, regardless of whether the right deprived involved 'state action.'" *Kedra v. City of Philadelphia*, 454 F.Supp. 652, 665 n. 10 (E.D.Pa. 1978). Though distinct, the concepts merge when a public official is involved. *Flagg,* 436 U.S. at 157 n. 5, 98 S.Ct. at 1734 n. 5; *Kedra,* 454 F.Supp. 665 n. 10. Thus, it is clear that a finding of state action necessarily includes a finding of under color of state law, the former being a subset of the latter, since state action by definition includes the "under color of state law" element. Therefore, if state action is found under Fourteenth Amendment analysis, the "under color of state law" element is satisfied. Conversely, if state action is not found, there is no need to delineate the parameters of "under color of state law" because state action is required in the case at bar.[6]

The Supreme Court has recently held that "private use of challenged state procedures (Va.Code § 8.01-533) with the help of state officials constitutes state action for purposes of the Fourteenth Amendment." *Lugar v. Edmondson Oil Co.,* ―― U.S. ――, ――, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982). In *Lugar,* the petitioner, a lessee-operator of a truck stop in Virginia, was indebted to his supplier, Edmondson Oil Co., Inc. Edmondson sued on the debt in Virginia state court. Ancillary to that action

and pursuant to state law, Edmondson sought prejudgment attachment of certain of petitioner's property under Va.Code § 8.01-533 (the statute at issue in the cause currently before this court). The prejudgment attachment procedure requires only that respondents allege, in an *ex parte* petition, a belief that petitioner was disposing of or might dispose of his property in order to defeat his creditors. Acting upon that petition, a clerk of the state court issued a writ of attachment, which was then executed by the county sheriff. This effectively sequestered petitioner's property, although it was left in his possession. Pursuant to the statute, a hearing on the propriety of the attachment and levy was later conducted. Thirty-four days after the levy, a state trial judge ordered the attachment dismissed because Edmondson had failed to establish the statutory grounds for attachment alleged in the petition.

The petitioner subsequently brought an action under 42 U.S.C. § 1983 against Edmondson and its president alleging that by attaching his property, the respondents had acted jointly with the state to deprive him of his property without due process of law. The district court, relying on *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), held that the actions of the respondents did not constitute state action as required by the Fourteenth Amendment and that the complaint therefore did not state a claim upon which relief could be granted under § 1983. The Fourth Circuit, sitting *en banc,* affirmed: 639 F.2d 1058 (1981).

§ 1983 with the state action requirement of the Fourteenth Amendment. *District 28 United Mine Workers of America v. Wellmore Coal Corporation,* 609 F.2d 1083 (4th Cir.1979). Since that ruling may be considered dictum and not controlling in the case, this court need not hold likewise.

Viewing state action as a requirement of the constitutional deprivation, it is apparent that the "under color of state law" element of 42 U.S.C. § 1983 is analytically distinct from state action. To hold otherwise would render meaningless the Supreme Court's two-requirement test of *Flagg.*

**5.** The importance of employing different standards for state action and under color of state law is readily apparent upon consideration of those rights protected by the Constitution from private infringement. *See Kedra v. City of Philadelphia,* 454 F.Supp. 652, 664 n. 10 (E.D. Pa.1978).

**6.** The Court in *Flagg* similarly avoided defining under color of state law by noting the necessity of state action in the claim.

The Supreme Court, noting that it had consistently held that constitutional requirements of due process apply to garnishment and prejudgment attachment procedures wherever officers of the state act jointly with a creditor in securing the property in dispute, stated that it was difficult to reconcile the Fourth Circuit's decision with its previous decisions and the Congressional purpose in enacting § 1983. —— U.S. at ——, 102 S.Ct. at 2752. The Court, in reversing the Fourth Circuit held:

> If the creditor-plaintiff violates the debtor-defendant's due process rights by seizing his property in accordance with statutory procedures, there is little or no reason to deny the latter a cause of action under the federal statute, § 1983, designed to provide judicial redress for just such constitutional violations. To read the 'under color of any statute' language of the act in such a way as to impose a limit on those Fourteenth Amendment violations that may be redressed by the § 1983 cause of action would be wholly inconsistent with the purpose of § 1 of the Civil Rights Act of 1871, 17 Stat. 13, from which § 1983 is derived.

*Id.* at ——, 102 S.Ct. at 2752.

█ This court, in reliance on the *Lugar* decision, finds that the defendant Hurley acted under color of state law in using Virginia's attachment procedure; therefore, the Commonwealth's motion to dismiss on its first ground is denied.

### b. ABSTENTION

The plaintiff, having established state action in the case, the issue now becomes whether the plaintiff has suffered a constitutional deprivation because of the application of Virginia's attachment statute to him. The Commonwealth asks the court to abstain from exercising its jurisdiction over the case on the grounds of equity, comity, and federalism. It argues that plaintiffs have not overcome the presumption that this court should abstain.

█ Abstention, however, is the exception rather than the rule to the court exercising its jurisdiction. The Supreme Court has consistently held that abstention:

> ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959), *quoted in Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

█ It is appropriate for a district court to abstain (1) when it is possible that "the state courts may interpret a challenged state statute so as to eliminate, or at least to alter materially, the constitutional question presented," *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 477, 97 S.Ct. 1898, 1902, 52 L.Ed.2d 513 (1977); *Railroad Comm'n v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1943), and (2) when there is an ongoing state proceeding in which the petitioner will have an opportunity to present his constitutional claims. *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Judice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Abstention serves to avoid unnecessary adjudication of constitutional issues and prevent interference with the states. Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1093, 1101 (1974).

█ The court does not feel that this is one of the "exceptional" cases in which it should abstain. There is no unsettled question of state law which might avoid or modify the constitutional issue. *Railroad Comm'n v. Pullman Co., supra.* The Virginia attachment statute is clear in the procedures it calls for and under what circumstances an attachment will issue. The question before this court is whether the attachment statute is unconstitutional as it

stands. A similar clarity appears in Va. Code Ann. § 34–29 (Cum.Supp.1979), which the Commonwealth acknowledges is applicable to the attachment of wages and clearly prohibits 100% garnishment of wages.

As to the Commonwealth's argument that there is an ongoing state proceeding in which Fuller can present his constitutional claims, this court must disagree. Although it is true that Fuller still has an opportunity to appear before the Buchanan County District Court and protest the payment of his wages to Mrs. Hurley under the second attachment,[7] there is no indication in the statute that the lower court would address itself to any constitutional issues presented. The debtor is afforded the opportunity to discount the validity of the underlying debt, Va.Code Ann. § 8.01–568 (Repl.Vol.1977), but this court must question whether the state court would seriously consider a nonresident's pleas that a Virginia statute operates unconstitutionally against him. In other words, though there is an ongoing state proceeding, there is no "opportunity" for plaintiff to present his claims.[8] *Cf. Usher v. Waters Insurance & Realty Co.,* 438 F.Supp. 1215 (D.C.N.C.1977).

Section 1983 was designed to provide redress for civil rights litigants whose constitutional rights had suffered at the hands of the state. Under the circumstances, the court is loathe to relieve itself of jurisdiction over the case on the grounds that the plaintiff would be adequately protected by the state court judicial system. The principal plaintiff is a nonresident whose main source of income has been deprived him 100% by operation of a Virginia statute, clearly in violation of another Virginia statute, as well as federal law. The Commonwealth argues that, in spite of the irreparable harm to the plaintiff, this court must bow to the interests of comity and federalism. The court concludes, however, that it is not the plaintiffs who have failed to rebut the presumption that the court should abstain, but the Commonwealth which has failed to show their countervailing interest as opposed to Mr. Fuller's, *which must be given preeminence.*

c. DEPRIVATION OF A RIGHT

In order to state a claim under § 1983, once the plaintiff has established state action, he must demonstrate the deprivation of a right, privilege, or immunity secured by the Constitution and laws. In *Lugar,* there was considerable confusion as to whether Lugar's ultimate claim of constitutional deprivation was directed at the Virginia attachment statute itself or at its erroneous application to him. *Supra,* at ——, 102 S.Ct. at 2754. The Court opined that the resolution of this issue was essential to the proper resolution of the case. *Id.* The Court ruled that private misuse of a state statute does not describe conduct which can be attributed to the state and, therefore, does not state a cause of action under § 1983. However, "the procedural scheme created by statute is obviously the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action . . . ." *Id.* at ——, 102 S.Ct. at 2756.

The Court remanded the case to the Fourth Circuit for a determination of whether Lugar had alleged that the statute was unconstitutional, and if, so for a ruling on the constitutionality of the statute.

█ In the case *sub judice,* the plaintiff has alleged that the attachment statute is unconstitutional and that it was misapplied to him. Although the court is of the opinion that the statute is unconstitutional as

---

7. *See* Va.Code Ann. 8.01–552, –568 (Repl.Vol. 1977). Plaintiffs have submitted that there are five attachments in all, of which two were initiated by Mrs. Hurley. The only attachment before the court, however, is the latest one that is the subject of the preliminary injunction.

8. Plaintiff would have the court decline to abstain on the basis that *Younger*-type abstention is not applicable unless the state court proceeding had been initiated by the state. *See Johnson v. Kelly,* 583 F.2d 1242 (3d Cir.1978). As the *Johnson* court noted in distinguishing *Judice, supra,* on this point, though the state was not technically a party in the state court proceeding its powers are most certainly intertwined with the court's injunction in this case.

drafted [9] it does not so hold at this time. At this time, the court, mindful that the

pleadings must be viewed most favorable to the plaintiff under Fed.R.Civ.P. 12(b)(6),

**9.** The Supreme Court has considered the issue of applying due process to a number of debtor-creditor situations. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) set forth the cornerstone for the Court's application of fundamental principles of due process to statutory procedures for prejudgment garnishment. The Court held that prior notice and hearing were necessary before one's wages could be garnished in a prejudgment setting. *Sniadach,* 315 U.S. at 342, 89 S.Ct. at 1823.

*Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) was the boldest stroke made by the Supreme Court on behalf of debtors' rights. There, the Court held that only under extraordinary circumstances was the postponement of notice and an opportunity for a hearing justified. *Fuentes,* 407 U.S. at 90, 92 S.Ct. at 1999.

A retreat from this position was clearly sounded in *Mitchell v. W.T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). There the Supreme Court held that an *ex parte* application for sequestration by a creditor was constitutionally sound where only a judge authorized the sequestration and a "full and immediate post-termination hearing" was provided. Therefore, the strictures of a pretermination hearing imposed by *Fuentes* were not followed. However, the case was not totally overruled as in *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Supreme Court struck down the Georgia garnishment statute where the writ was issuable by the court clerk, as in Virginia, without participation by a judge; also, there was no provision for "an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment." *North Georgia Finishing, Inc.,* 419 U.S. at 607, 95 S.Ct. at 722.

Applying the cases *supra,* handed down by the Supreme Court, this court is mindful of the many questions left unanswered by them. A dusty answer gets the inquirer when hot for certainties in this area of the law. However, a fundamental question concerning this case is whether the provisions for issuing a writ of attachment comport with the *Mitchell* and *Di-Chem* standard of due process. This court is of the opinion that both *Mitchell* and *Di-Chem* offer sound guidance on that point.

The court construes Va.Code Ann. § 8.01–537 to allow an attachment petition to be filed before a clerk of the circuit court or general district court or a general district court judge (Va.Code Ann. § 8.01–537(A) states that, "[e]very attachment shall be commenced by a petition filed in the clerk's office, whether the court be in session or not, or before a district court judge or clerk of a district court ...." Va.Code Ann. § 8.01–540 (Repl.Vol.1977) command the clerk "before whom the petition is

filed" to issue an attachment.) or before a magistrate.

Authority for the proposition that a magistrate may issue an attachment is found in § 8.01–537(B), which states in part, "the plaintiff praying for an attachment shall, at the time that he files his petition with the magistrate, then within ten days thereafter, pay to the Clerk of the court to which the return is made the proper writ tax ...." Likewise, the statutory language indicates that Va.Code Ann. § 8.01–540 imposes upon the clerk or magistrate before whom the petition is filed, a duty to see that the petition meets the requirements of Va.Code Ann. § 8.01–537. (The actual language of Va.Code Ann. § 8.01–540 merely states that "[u]pon the filing of the petition mentioned in § 8.01–537 ....")

A number of cases have interpreted *Mitchell* and *Di-Chem* to require judicial supervision of a property pretermination proceeding. In *Mitchell,* Justice White wrote:

Mitchell was not at the unsupervised mercy the creditor and court functionaries. The Louisiana law provides for judicial control of the process from beginning to end. This control is one of the measures adopted by the State to minimize the risk that the *ex parte* procedure will lead to a wrongful taking. 416 U.S. at 617, 94 S.Ct. at 1905.

The Eighth Circuit Court of Appeals and the Fifth Circuit Court of Appeals are representative of courts which have held that only a judge may issue an attachment type warrant where there is no pretermination hearing on the propriety of the seizure. (*See Guzman v. Western State Bank,* 516 F.2d 125 (8th Cir.1975); *Johnson v. American Credit Co.,* 581 F.2d 526, 534–35, n. 16 (5th Cir.1978).) A plethora of opinions support this view. *Mississippi Chemical Corp. v. Chemical Const. Corp.,* 444 F.Supp. 925, 941 (S.D.Miss.1977); *Betts v. Tom,* 431 F.Supp. 1369, 1378 (D.Haw.1977); *Aaron Ferer & Sons Co. v. Berman,* 431 F.Supp. 847, 852 & n. 6 (D.Neb.1977); *Hamrick v. Ashland Finance,* 423 F.Supp. 1033, 1036 (S.D.W.Va. 1976); *United States General, Inc. v. Arndt,* 417 F.Supp. 1300, 1313 (E.D.Wis.1976); *Terranova v. AVCO Financial Services,* 396 F.Supp. 1402, 1404–05, 1407 (D.Vt.1975); *Thornton v. Carson,* 111 Ariz. 490, 533 P.2d 657 (1975); *Ray Lein . Const., Inc. v. Wainwright,* 346 So.2d 1029, 1032 (Fla.1977); *Unique Caterers, Inc. v. Rudy's Farm Co.,* 338 So.2d 1067, 1071 (Fla. 1976); *Hillhouse v. City of Kansas City,* 221 Kan. 369, 559 P.2d 1148, 1153, 1156 (1977); *Williams v. Matovich,* 560 P.2d 1338, 1340–41 (Mont.1977).

Likewise, this court takes note of authority to the contrary. One case representative of the view that *Mitchell* and *Di-Chem* do not require judicial supervision of pretermination warrants was rendered by the Third Circuit Court of Appeals, which stated:

holds only that the plaintiff has stated a cognizable claim for relief under § 1983. The plaintiff's § 1983 claim in this action will be stayed until the Fourth Circuit has had the opportunity to rule on the constitutionality of the statute in the remanded *Lugar* case.

## III. THE PENDENT CLAIM

The final issue the plaintiff raises is whether Virginia's attachment statute, insofar as it permits creditors to recover more than the lesser of twenty-five percent (25%) of a debtor's weekly disposable earnings or the amount by which the disposable earnings for that week exceed thirty (30) times the federal minimum wage, violates 15 U.S.C. § 1673 (see footnote 2) and is, therefore void under Article 6, Clause 2 of the United States Constitution. In the alternative, as a pendent matter, the plaintiff argues that the writ of attachment now pending in the General District Court of Buchanan County is invalid and void since it violates Va.Code § 34–29. (see footnote 3).

■■■ This court finds that Virginia's attachment statute is not unconstitutional under Article 6, Clause 2 because, as discussed below, it does not allow an attachment of wages in an amount greater than that allowed by 15 U.S.C. § 1673. However, the court will address the validity of the Buchanan County District Court's writ of attachment.

■■■ This claim comes before the court under its pendent jurisdiction. There is no doubt that this court has the power to adjudicate a state claim related to a substantial federal claim in the same suit. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Exercise of pendent jurisdiction is within the court's discretion, *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Reamer v. United States,* 459 F.2d 709 (4th Cir.1972); which discretion should not be affirmatively exercised unless such exercise would serve the considerations of judicial economy, convenience and fairness to litigants. *United Mine Workers, supra,* 383 U.S. at 726, 86 S.Ct. at 1139.

■■■ Because it would unnecessarily inconvenience the plaintiff and not serve to promote judicial economy, the court will exercise its pendent jurisdiction over the claim. If the state law had not been clear on this issue, the court would probably have chosen not to decide the claim; however, since state law is clear, this court will now make its final ruling on it. Additionally, pursuant to the order of this court dated October 29, 1979, all evidence presented at the hearing on the preliminary injunction was admitted into evidence as part of the

The Court's approval of the Louisiana procedures in *Mitchell* does not necessarily establish judicial participation as a constitutional requisite. The concern clearly is that the official making the determinations exercise some discretion and possess the necessary professional competence. It is probably true that judicial participation in the writ process affords a greater opportunity for meeting that concern. However, due process is flexible and if that concern can be met by other reasonable means, a state should have the leeway to make the selection. *Jonnet v. Dollar Sav. Bank,* 530 F.2d 1123, 1130, n. 15 (3d Cir.1976).

This court is of the opinion that the view held by such courts as the Fifth Circuit Court of Appeals and the Eighth Circuit Court of Appeals is more sound. Otherwise, the promise of due process in this area will too often be easily broken in practice. This point is clearly illustrated in the case *sub judice* where a magistrate issued a writ of attachment, for the full value of a wage earner's wages which is not allowed under Virginia law, and on the mere allegation that it was for a "past due account" due and payable on a "past due day." Under the Virginia statute not only may a clerk of court or magistrate tie up a wage earner's compensation, but he could also paralyze a multi-million dollar business by attaching its assets. In either case, this court feels that sound judicial discretion is a necessary factor in order for the statute to comply with due process requirements. Therefore, the court is of the opinion that the provisions allowing circuit and district court clerks and magistrates to review petitions for attachment and to make determination as to whether the writ should be issued, under Va.Code Ann. § 8.01–537 and 8.01–540, are unconstitutional.

record of the trial on the merits, in accordance with Fed.R.Civ.P. 65, thereby dispensing with the need for its repetition. Both original parties to the suit were granted leave to present additional evidence by deposition, and only the plaintiff has availed himself of that opportunity. Thus all evidence being before the court at this time, the court will rule on the plaintiff's prayer for a permanent injunction based upon the disposition of this issue.

Defendant Hurley obtained a writ of attachment from a magistrate in Buchanan County pursuant to Va.Code Ann. § 8.01–533 *et seq.* (Repl.Vol.1977). Section 8.01–534 provides that the assets of an alleged debtor may be attached where, *inter alia,* the debtor is not a resident and "has estate or has debts owing to such defendant within the county or city in which the attachment is . . . . The word 'estate,' as herein used, shall include all rights or interests of a pecuniary nature which can be protected, enforced, or proceeded against in courts of law or equity . . . ."

Two days after an alleged debt was due, Mrs. Hurley obtained an attachment issued by the magistrate of Buchanan County against the plaintiff and his employer for $475.00. As a result of this attachment, all of the plaintiff's disposable salary for a two-week period, $57.00, was withheld by his employer. On September 24, 1979, the General District Court of Buchanan County entered judgment for Hurley for the amount that had been withheld. Fuller never received notice of this hearing. Again, on September 27, 1979, the defendant obtained a writ of attachment for $417.13. Again, all of the plaintiff's disposable salary was withheld.

Va.Code Ann. § 34–29 (Cum.Supp.1979) provides that the maximum amount of a debtor's wages that may be garnished is the lesser of 25% of his disposable earnings for that week or the amount by which his disposable earnings for that week exceed thirty times the federal minimum hourly wage. Garnishment is defined as "any legal or equitable procedure through which the earnings of any individual are required to

be withheld for payment of any debt." *Id.* § 34–29(d)(3).

This court finds, and the Commonwealth concedes, that the attachment of wages under § 8.01–533 *et seq.* is subject to a garnishment limitations of § 34–29 (if this were not so the statute would clearly be unconstitutional, a violation of 15 U.S.C. § 1673).

Accordingly, this court permanently enjoins the enforcement of this writ of attachment in this case to the extent that it allows Mr. Fuller's wages to be withheld in contravention of Va.Code Ann. § 34–29.

Further, the judgment entered against Fuller by the Buchanan County General District Court on September 24, 1979 is void as Fuller was never served with process nor did he have any notice of the proceeding whatsoever; therefore, the court did not enter a legal judgment against Fuller.

In accordance with the opinions expressed above, the court makes the following rulings:

(1) the Commonwealth's motion to dismiss is denied;

(2) plaintiff's claim on the grounds of a deprivation of procedural due process is stayed; and

(3) the court uses its discretion to exercise jurisdiction over the pendent state law claim and, therefore, permanently enjoins the enforcement of the writ of attachment under consideration to the extent that it is violative of Va.Code Ann. § 34–29.

(4) the September 24, 1979 judgment of the Buchanan County General District Court entered against Terry Fuller is void and unenforceable.